GLENN AGRE BERGMAN & FUENTES LLP
Lyn R. Agre (SBN 178218)
Edward E. Shapiro (SBN 326182)
L. Reid Skibell (admitted *pro hac vice*)
Ashley Zitrin (SBN 262238)
44 Montgomery Street, Suite 2401
San Francisco, CA 94104
Telephone: (415) 599-0880
lagre@glennagre.com
eshapiro@glennagre.com
rskibell@glennagre.com
azitrin@glennagre.com

<u>Attorneys for Plaintiff</u>

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY CHANG,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CARLOS CASHMAN, ARROWSIDE CAPITAL, LLC, ARROWSIDE FUND GP, LLC, ARROWSIDE VENTURES, LLC, and CASHMAN FAMILY INVESTMENTS II LLC,<br><br>　　　　　Defendants. | Case No.: 3:22-cv-02010-AMO<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION FOR LEAVE TO AMEND THE COMPLAINT**<br><br>Judge: Hon. Araceli Martínez-Olguín<br>San Francisco Courthouse,<br>19th Floor, Courtroom 10<br>Hearing Date: Thursday March 7, 2024<br>Time: 2:00 p.m.<br><br>Action Filed:  March 29, 2022<br>Trial Date:  September 17, 2024 |

**PRELIMINARY STATEMENT**

Defendants' opposition is predicated on the contention that Plaintiff should have divined Defendant Carlos Cashman's abuses of the corporate form, including the existence of Perseverus LLC ("Perseverus"), even though there is no reference to Perseverus or his other abuses of the corporate form in Cashman's discovery responses or initial disclosures. That position is unavailing. Defendants' late-stage discovery revelations forced Plaintiff to seek leave to amend the complaint in order that she be made whole after Defendants' wrongdoing. Her amendment will not unduly delay the litigation here as all of the proposed additional Defendants are entities completely controlled by Defendant Cashman, and any additional discovery will be targeted to the formation and holdings of the newly added Entity Defendants and Defendant Cashman's use of the same to perpetrate his wrongdoing against Plaintiff. No one wants this litigation resolved faster than Plaintiff who has struggled with unemployment and a severe impact to her professional reputation while prosecuting these claims. In fact it is Defendants who have dragged their feet delaying this litigation, most recently taking nearly a month to respond to a simple request for a protective order from a third party causing the recent postponement of discovery deadlines in this case. Plaintiff's factual support for her allegations also easily clear the low bar for leave to amend, and thus her motion should be granted.

**ARGUMENT**

The standard for granting leave to amend after one amendment has already been made is that leave should be freely given unless the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). None of these scenarios are present here.

**A. Defendants will not be prejudiced by Plaintiff's proposed amendment because they caused it to occur.**

Plaintiff was unaware of the existence of Perseverus until its existence was revealed at Tom Copeman's deposition in November 2023. Copeman's testimony that Defendant Cashman created Perseverus in collusion with his attorneys in order to segregate future investments led Plaintiff to investigate Defendant Cashman's improper use of the named and proposed Entity Defendants to avoid liability here. Prior to that testimony, Plaintiff had no reason to suspect Defendant Cashman abused the corporate form with regard to his investment vehicles. Once it was revealed, however, Cashman's role as alter ego to these entities, and the proposed additional Defendants' involvement in Cashman's wrongdoing was also revealed, felling his house of cards.

Nor could Chang have reasonably discovered Perseverus's existence before Copeman's testimony. Perseverus was not tied to Defendants in any public filings and it was named outside of the "Arrowside" nomenclature despite initially being called Arrowside Ventures II prior to Plaintiff initiating this litigation. It is clear Defendants sought to hide Perseverus's existence and did so successfully until it was revealed by a third-party witness. Their attempts to conceal the existence of Perseverus should not be rewarded.

Indeed, Defendants should have revealed Perseverus's existence prior to November 2023, as Copeman's severance agreement with Perseverus and Arrowside Ventures LLC ("Ventures") was responsive to Plaintiff's Request for Production 16, which requested documents for the period of January 1, 2020 through the present, a time period to which Defendants did not object. Zitrin Declaration in Support of Plaintiff's Motion for Leave to Amend ("Zitrin Decl.") (Dkt. No. 81) at Exh. E, Instructions ¶ 11. The ESI protocol date cut off of January 4, 2022 was proposed by Defendants a year ago – Plaintiff's initial ESI proposal did not have a date cut-off.  When Plaintiff agreed to that ESI protocol she had no reason to believe Copeman and Defendant Cashman went on

- 2 -
PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION FOR LEAVE TO AMEND THE COMPLAINT
Case No. 3:22-cv-02010-AMO

to create the entity she was promised a partnership in, using her investment strategy, and Defendants were seeking to hide its existence by setting that date cut off. Copeman severance agreement was responsive to Plaintiff's Request for Production and Defendants are again misrepresenting the understanding of the parties to this Court in attempting to claim otherwise.

Plaintiff's newly alleged theories are also not a radical departure from her previous allegations, as claimed by Defendants. The causes of action and theories of liability are largely the same, they just now involve more entities than Plaintiff was previously aware, and that Defendant Cashman so dominates and controls his entities as to make them liable for his wrongdoing.

**B. Plaintiff seeks her amendment in good faith and will not unduly delay trial.**

For over two years, Plaintiff has suffered from a severely impaired professional reputation and loss of employment prospects due to Defendants' actions. No one wants this case resolved more quickly than Plaintiff. However, Plaintiff also wants to be duly compensated for the fallout from Defendants' misconduct. That amount exceeds the current Defendant Entities' valuation because Defendant Cashman has squirreled his assets away in the proposed Defendant Entities to minimize his exposure here.

Plaintiff could not have raised her alter ego theories against Cashman and the newly added Defendants prior to Copeman's revelation of Perseverus's existence because she did not know, nor could have discovered, that Cashman was using his attorneys to strategically form entities to avoid liability. Once that was revealed, Plaintiff was able to investigate Cashman's purpose with regard to his controlled entities and discover that he had abused the corporate form.

Proposed Defendant Cashman Opportunity Fund LLC's ("Opportunity Fund") specific tie to Ventures was only made clear when its investment interest was appended to the Ventures Operating Agreement. Zitrin Decl. Exh B, Schedule A. Prior to seeing that formation document, Plaintiff did not know that Opportunity Fund *still* held investments for Ventures even after Ventures's

- 3 -
PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION FOR LEAVE TO AMEND THE COMPLAINT
Case No. 3:22-cv-02010-AMO

formation. It made sense that Opportunity Fund held an investment for Ventures prior to Ventures's formation because Ventures did not yet exist. However, for Opportunity Fund to hold that investment over a year after Ventures's formation demonstrates that Ventures is a sham entity, violating the corporate form.

Similarly, Plaintiff could not have plead her new allegations against the already named Defendants in her first amendment of the Complaint because she was not aware of the extent of Cashman's control of these entities or his disregard of the corporate form until after the Ventures Operating Agreement and Perseverus agreements were produced, and after the Cashman and Copeman deposition testimony revealing how Cashman nefariously used these entities to further his wrongdoing against Plaintiff.

**C. Plaintiff's new allegations are not futile because she has alleged facts sufficient to support them.**

Defendants argue that Plaintiff's proposed allegations are futile because Defendants disagree with her allegations. However, Plaintiff need not prove her case today and "such [supposedly] evidence-based arguments are more properly asserted in a motion for summary judgment." *Vietnam Veterans of America v. C.I.A.*, 288 F.R.D. 192, 219 (N.D. Cal. 2012). "[F]or a motion to amend a pleading to be denied for futility, the amendment must be clearly insufficient or frivolous on its face, and the likelihood of success on a new claim or defenses is not a consideration for denying leave to amend a pleading unless the claim is clearly frivolous." 61A Am. Jur. 2d Pleading § 672 (internal citations omitted). "[T]he fact that the claim may be difficult to prove does not constitute grounds for refusal of leave to amend." *Id.*

Throughout Defendants' opposition, they use the phrase "Plaintiff misrepresents" where they should substitute the phrase "Plaintiff alleges and Defendants disagree." Plaintiff has not misrepresented the facts but rather alleges different facts and a different interpretation of those facts

- 4 -
PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION FOR LEAVE TO AMEND THE COMPLAINT
Case No. 3:22-cv-02010-AMO

from that which Defendants would prefer the Court believe. This is the reason we are in litigation. Plaintiff has made and continues to make allegations against Defendants with which they do not agree, but she need not prove their veracity until trial and not here in a motion for leave to amend her complaint. Her proposed amended allegations are firmly grounded in the facts disclosed in discovery and cannot be quashed with a self-serving declaration from Defendant Cashman that she is incorrect. Plaintiff should be allowed to assert the allegations in an amended complaint, and Defendants can then oppose through their answer or a motion to dismiss, as is the way of litigation, if they disagree.

Just to make clear that Plaintiff has fully supported her newly proposed theories of liability with factual allegations against the proposed new Defendants, here are the ways the new entities are liable for Plaintiff's damages as alleged in the proposed amended complaint.

Perseverus is the venture capital arm of the investment platform contemplated by Plaintiff, Copeman and Defendant Cashman in which Cashman promised Plaintiff a partnership prior to summarily dismissing her in December 2021. This is supported by Copeman's testimony to that fact (Zitrin Decl. Exh. D), Defendants' filings with this Court including Cashman's recent declaration filed in support of his opposition to Plaintiff's motion to compel (Dkt No. 83-1) wherein he states Perseverus was created as a means for Cashman and Copeman to continue investing without Plaintiff, and Copeman's severance agreement with Perseverus and Ventures wherein it states Copeman cannot receive any payout until this litigation is resolved and paid for with Perseverus and Ventures's funds (Zitrin Decl. Exh. F at 8). Based on all of these facts, Plaintiff should have received a salary and carry from Perseverus but for Defendants' wrongdoing.

Defendants' reductive argument that Plaintiff could not possibly have supplied Perseverus's investment strategy to such supposed titans of industry as Cashman and Copeman should be rejected out of hand. Defendants offer no factual counterpoints to Copeman's testimony that

- 5 -
PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION FOR LEAVE TO AMEND THE COMPLAINT
Case No. 3:22-cv-02010-AMO

Plaintiff originated the strategy because they cannot. Instead, Defendants offer a simplistic and unjustifiable scoff at Plaintiff's alleged lack of experience as a mere woman younger than Cashman and Copeman and therefore apparently incapable of ideating anything of value. Defendants completely disregard her history as a successful entrepreneur and chief of staff at a prestigious venture capital firm, experience which caused Defendants to seek out her expertise in the first place.

Opportunity Fund held and still currently holds Ventures's assets as shown in the Ventures Operating Agreement (Zitrin Decl. Exh. B, Schedule B) from which Chang should have received carry but for Defendants' wrongdoing. Whether Plaintiff performed work on a particular asset is inapposite as she was to receive fund-level carry, not investment-level. Further, Cashman's claim in his declaration that the Ventures Operating Agreement shows that Ventures holds the asset and not Opportunity Fund is not determinative, as (1) Cashman's self-serving declaration cannot summarily overcome Plaintiff's allegations and (2) the Operating Agreement contains an asterisk indicating that Opportunity Fund holds this asset, Defendants have produced nothing showing the asset was ever transferred to Ventures, and the asset itself has no record of any requests or actual transfer from Opportunity Fund to Ventures.

Cashman Family Investment LLC ("Family I") also held Ventures's assets from which Chang should have received carry. Family I further funneled approximately $22 million into proposed new Defendant Arrowside Fund LP ("Fund LP"), and holds a 5% interest in existing Defendant Arrowside Fund GP, LLC ("Fund GP") which is owned by Carlos Cashman directly. Defendants' argument that Family I did not receive any benefit from its investment in Fund LP, but rather Cashman himself received the benefit, just goes to support Plaintiff's allegations that these are not true entities and are, instead, Cashman's alter egos, making them proper defendants in this litigation.

Fund LP provided and still provides funding for Fund GP's investments from which Chang should have received carry but for Defendants' wrongdoing, and Defendant Cashman completely dominates and controls Fund LP. Thus it is also properly added as a defendant here.

Plaintiff has certainly shown a factual basis for her alter ego allegations under either Delaware law or California law as she has alleged, based on deposition testimony and documents produced, that the entities are a single economic entity, controlled entirely by Cashman, and that it is inherently unjust to treat them as anything otherwise. Defendant Cashman in essence bifurcated one investment vehicle into Perseverus and Ventures so that Perseverus could continue to pursue the investment strategy Plaintiff supplied without exposing its assets to the instant litigation. Ventures was in turn created as a sham entity devoid of any actual investment purpose except to claim that the investments it holds are the only ones on which Plaintiff is entitled to carry compensation. Perseverus and Ventures are rightly considered the same entity, and Plaintiff has sufficiently alleged that they are, and further that Cashman treated all of the Defendant Entities (named and proposed) with the same disregard for the corporate form. Here, "in general, the company simply functioned as a facade for the dominant shareholder," i.e., Cashman. *See EBG Holdings LLC v. Vredezicht's Gravenhage*, 34 Del. J. Corp. L. 642 (Del. Ch. 2008). Again, Plaintiff disagrees with Defendant Cashman's assertion that she is entitled to carry only on Ventures's holdings rather than also being entitled to carry on investments that she made possible with her unpaid labor in supporting the other Defendant Entities' investments, both named and proposed. But the standard is not that Plaintiff has to prove these allegations in the instant motion, only that she has sufficiently alleged facts to support them, which she has with Defendant Cashman's own words.

Moreover, Plaintiff has sufficiently alleged facts to support finding injustice if the Court allows Cashman's farcical entities go unchecked, as "those in control of the corporate enterprise have not treated it as a distinct legal entity—have ignored the 'corporateness' of the corporation and

- 7 -
PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION FOR LEAVE TO AMEND THE COMPLAINT
Case No. 3:22-cv-02010-AMO

have themselves treated it as their 'instrumentality'" and therefore this Court should not "regard the corporation as an effective limitation on liability." *See Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 987 (Del. Ch. 1987). Again, Defendants' difference of opinion on these facts does not form the basis for a denial of Plaintiff's motion here.

The same is true for Plaintiff's proposed allegations supporting civil conspiracy. Plaintiff has sufficiently alleged that the Defendant Entities, with Defendant Cashman dominating and controlling them, knowingly agreed together to fraudulently induce Plaintiff to work for Cashman and his Defendant Entities based on false statements from Cashman that she would be compensated for her work. Defendant Cashman used these entities to further his wrongdoing, and continues to use them to attempt to avoid liability here. Whether the pleading standard is heightened or not, Plaintiff has satisfied it. Further, Defendants' citation to unpublished opinions notwithstanding, civil conspiracy is available for both negligent and intentional torts, and therefore is properly pled as to her second cause of action as well. *See Navarrete v. Meyer*, 237 Cal. App. 4th 1276, 1293 (2015) (rejecting the argument that negligence is insufficient to state a claim for civil conspiracy, and explaining the "law in California remains that a civil conspiracy requires an express or tacit agreement only to commit a civil wrong or tort"). More recent cases have specifically found that negligence can support a cause of action for civil conspiracy where, as here, defendants intentionally formed an agreement to commit an act but the resulting harm to plaintiff was caused by negligence. *See, e.g.*, *Bradshaw v. City of Los Angeles*, No. 219CV06661VAPJCX, 2023 WL 3400634, at *18 (C.D. Cal. Mar. 10, 2023) (declining to dismiss a civil conspiracy claim based on negligence and following *Navarette*). Moreover, as stated above, Plaintiff could not have alleged civil conspiracy against the already named Defendants when she first amended her complaint because she did not know until November 2023 that Cashman both dominated the Defendant Entities and had used legal fictions to further his wrongdoing against Plaintiff.

As for successor in interest liability, Defendants' arguments, once again, are predicated on disputed facts. Defendants' self-serving description of the facts does not change that Plaintiff has sufficiently alleged that Perseverus is a successor in interest to Ventures. Perseverus is what Ventures would have been if Cashman had not secretly bifurcated the investment platform into two entities in an attempt to shield assets from liability. Discovery has already shown that Cashman transferred the assets he was going to put toward the agreed upon investment platform with Plaintiff into Perseverus, and Copeman was the investment manager for both entities, thus satisfying the standard for successor in interest liability. *See No Cost Conference, Inc. v. Windstream Communications, Inc.*, 940 F.Supp.2d 1285, 1299 (S.D. Cal. 2013).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court allow her leave to amend her complaint.

DATED: January 19, 2024  Respectfully submitted,

By: */s/ Reid Skibell*
L. Reid Skibell (admitted *pro hac vice*)
Ashley Zitrin (SBN 262238)
Lyn R. Agre (Cal. Bar No. 178218)
Edward E. Shapiro (Cal. Bar No. 326182)
Glenn Agre Bergman & Fuentes LLP
44 Montgomery Street, Floor 41
San Francisco, CA 94104
Telephone: (332) 233-5784
rskibell@glennagre.com
azitrin@glennagre.com
lagre@glennagre.com
eshapiro@glennagre.com

*Attorneys for Plaintiff*