UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY CHANG,<br><br>    Plaintiff,<br><br>v.<br><br>CARLOS CASHMAN, et al.,<br><br>    Defendants. | Case No. 22-cv-02010-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO AMEND**<br><br>Re: Dkt. No. 80 |

Before the Court is Plaintiff Stacy Chang's motion for leave to amend her first amended complaint. Having considered the parties' papers, the relevant legal authority, and the arguments advanced by counsel during the March 14, 2024 hearing on the matter, the motion is GRANTED IN PART and DENIED IN PART for the reasons set forth below.

## I. BACKGROUND

### A. Factual Background[1]

This case stems from an employment dispute between Stacy Chang and Carlos Cashman. Stacy Chang is "a successful founder and designer in the fashion industry." ECF 32 ¶ 24. In March 2017, Chang "joined Founders Fund to work in the tech ecosystem." *Id.* In her role as Chief of Staff, "Chang sourced and led consumer investments, crafted the firm's consumer retail investment thesis, and worked closely with [the] General Partner and Chief Operating Officer." *Id.* ¶ 25. Over time, "Chang's reputation within Founders Fund grew, as did her profile within the broader venture capital community." *Id.*

In November 2019, Chang met Thomas Copeman through her work at Founders Fund. *Id.*

---

[1] The factual background is based on the allegations in the first amended complaint.

¶ 26.  In January 2020, Copeman introduced Chang to Carlos Cashman.  *Id.* ¶¶ 2, 26.  Cashman "was a well-known operator [and] investor and the Co-founder of Thrasio." *Id.* ¶ 26.  Thrasio is "an aggregator of Amazon third-party sellers that has been valued at approximately $10 billion." *Id.* ¶ 2.

In May 2021, Copeman told Chang that Cashman "wanted to create a new investment platform and raise a fund to work more closely with early-stage founders." *Id.* ¶¶ 2, 28. "Cashman would provide $10 million of capital as the anchor limited partner, with additional capital to be raised from other parties." *Id.* ¶ 28.

During a Zoom call on June 25, 2021, Chang made a presentation to Cashman and Copeman about the state of the venture capital industry. *Id.* ¶ 4.  Cashman and Copeman "explained their vision for the new venture and the key role Chang could play." *Id.* ¶ 31.  Chang "was interested in the new opportunity this collaboration presented, assuming that her new role would come with a partner title and partner carried interest upside." *Id.* ¶ 32.  Copeman and Cashman "assured her [the position] would include both and asked her to continue to work on various aspects of getting the fund off the ground." *Id.*

Cashman, however, did not send Chang a formal offer letter. *Id.* ¶ 33.  "[T]his was not surprising," because no entity "had . . . been created through execution of the corporate documents, [so] there was not yet an entity to send a letter on behalf of." *Id.*  Chang also "trusted Cashman's word given his stellar reputation within the early stage investing community." *Id.*

On September 17, 2021, Chang met with Cashman, Copeman, and the rest of the Arrowside team in-person. *Id.* ¶ 38.  "[I]t was understood and agreed that Chang was part of Arrowside going forward." *Id.* ¶ 39.  Arrowside Capital, LLC "would employ Chang and all of the other partners, and provide services and benefits to all employees, including infrastructure, offices, and IT systems." *Id.* ¶ 8.  Ownership of Arrowside Capital "would be split among the partners and there was to be a managing general partner on the early-stage private side [Arrowside Ventures, LLC] and a managing general partner on the public and late-stage private side [Arrowside Fund GP, LLC]." *Id.*  Arrowside Ventures and Arrowside Fund GP "would each have their own General Partnership entities and set of limited partners (i.e., investors in each entity)."

*Id.*

Based on statements from Cashman, Copeman, and another anticipated partner in Arrowside named Tucker Walsh, Chang "believed that she would receive carried interest from any investments she introduced to [Arrowside] Fund [GP]." *Id.* ¶¶ 35, 36. She also "anticipated her carried interest would be weighted more heavily in Ventures" and "understood that there would be a shared economic relationship between the entities all under one Arrowside management company such that she would receive some split of the carry value from" Arrowside Fund GP, even though she would be working mostly in, and sourcing investments for, Arrowside Ventures. *Id.* ¶¶ 8, 35.

Following the September meeting, Cashman treated Chang as a full-time employee and partner in Arrowside. *Id.* ¶ 40. On October 13, 2021, Chang told Cashman and Copeman that she would be winding down her responsibilities at Founders Fund and resigning in the coming weeks. *Id.* ¶ 48. Chang gave notice at Founder's Fund in mid-November, and her last day was November 30, 2021. *Id.* ¶ 15.

On December 10, 2021, Copeman told Chang that she would no longer be part of Arrowside and offered her one-month's pay and carry interest for three of her funding deals. *Id.* ¶ 63. She declined. *Id.* Subsequent exchanges between Chang, Cashman, and Copeman did not result in any resolution. *Id.* ¶¶ 65-67.

**B.    Procedural Background**

On March 29, 2022, Chang commenced this action against Cashman, Arrowside Capital, Arrowside Fund GP, Arrowside Ventures, and Cashman Family Investments II LLC (collectively, "Defendants").[2] ECF 1. In the operative first amended complaint, filed on July 25, 2022,[3] Chang asserts claims for (1) fraudulent inducement, (2) negligent misrepresentation,

---

[2] Chang alleges that Cashman used Cashman Family Investments II to store "[t]he deals that Chang sourced and worked on for Cashman and Arrowside . . . because the other entities had not yet been formally created." ECF 32 ¶ 20.

[3] After they filed Rule 12 motions to the original complaint, Defendants stipulated to the filing of Chang's first amended complaint. ECF 18, 19, 29.

(3) misrepresentations in violation of California Labor Code § 970, (4) breach of contract, (5) promissory estoppel, (6) unjust enrichment, (7) failure to pay wages upon separation of employment, (8) violation of California Business and Professions Code § 17200, and (9) failure to reimburse expenses and losses in violation of California Labor Code § 2802. ECF 32 ¶¶ 69-76, ¶¶ 77-84, ¶¶ 85-93, ¶¶ 94-97, ¶¶ 98-101, ¶¶ 102-106, ¶¶ 107-113, ¶¶ 114-117, ¶¶ 118-122.

On August 8, 2022, Arrowside Capital and Arrowside Fund GP filed an answer to the first amended complaint. ECF 35. Cashman, Arrowside Ventures, and Cashman Family Investments II moved for a more definite statement. ECF 33. The Court denied the motion on September 12, 2022. ECF 38. Cashman, Arrowside Ventures, and Cashman Family Investments II then filed their answer on September 26, 2022. ECF 43. On September 29, 2022, the Court issued a case management scheduling order, setting, among other deadlines, May 19, 2023 as the last day to amend the pleadings, and January 22, 2024 as the first date for trial.[4] ECF 45 at 1, 3.

On December 29, 2023, Chang moved for leave to amend her first amended complaint. ECF 80.[5] She seeks to add Perseverus LLC, Cashman Family Investment LLC ("Cashman Family Investment I"), Arrowside Fund LP, and the Cashman Opportunity Fund, LLC as defendants, add allegations of alter-ego liability and veil piercing, and in the alterative, civil conspiracy, as to Arrowside Ventures, Arrowside Fund GP, Arrowside Capital, Cashman Family Investments II, the Cashman Opportunity Fund, Arrowside Fund LP, and Cashman Family Investment I, and plead successor-in-interest liability allegations as to Perseverus.[6] *Id.* at 5-6; ECF 100 at 4.

---

[4] On request of the parties, the trial date in this matter has been continued twice; related deadlines have been continued three times. ECF 54, 55, 61, 62, 71, 72.

[5] The scheduling order in effect at the time of Chang's motion set January 31, 2024 as the close of fact discovery, May 1, 2024 as the close of expert discovery, April 15, 2024 as the due date for dispositive motions, August 22, 2024 as the date for the pretrial conference, and September 17, 2024 as the first day for trial. ECF 72 at 3.

[6] In her supplemental brief, Chang modifies the proposed amendment as it concerns civil conspiracy allegations, stating that she "seeks to add all entity Defendants to her present causes of action as they are all Defendant's alter ago, or in the alternative, all entered into a civil conspiracy with him to wrong [Chang]." *Id.* at 4. In the original motion, however, Chang sought to plead civil conspiracy in the alternative only as to her first find second causes of action. *Id.* at 19-20. The Court will not permit Chang to expand the proposed amendment beyond what she presented in her initial moving papers.

4

1  On January 12, 2024, Defendants filed their opposition to the motion. ECF 85. Chang's reply followed on January 19, 2024. ECF 87. Because neither party addressed the threshold question of whether the Court should grant relief from the scheduling order, the Court ordered the parties to submit short supplemental briefs on the issue.[7] ECF 97. Chang filed a supplemental brief on March 5, 2024, and Defendants filed their supplemental brief on March 7, 2024. ECF 100, 103. The Court held a hearing on the motion on March 14, 2024. ECF 105.

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 16

Federal Rule of Civil Procedure 16(b)(4) requires "good cause" and "the judge's consent" to modify a scheduling order. Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Mammoth Recreations*, 975 F.2d at 609). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Mammoth Recreations*, 975 F.2d at 609 (citation omitted). If the moving party fails to show diligence, "'the inquiry should end.'" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (quoting *Mammoth Recreations*, 975 F.2d at 609). If, however, "the moving party establishes good cause to modify the scheduling order, it must then demonstrate that its motion is also proper under Rule 15." *Calvary Chapel San Jose v. Cody*, No. 20-CV-03794-BLF, 2021 WL 4427384, at *1 (N.D. Cal. Sept. 27, 2021) (internal quotations and citation omitted).

### B.  Federal Rule of Civil Procedure 15

"Generally, Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon,*

---

[7] To date, Chang has not moved for leave to amend the scheduling order to permit the proposed amendment or to re-open fact discovery, which closed on January 31, 2024.

5

1  *Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations and citations omitted).  "[L]eave to
2  amend should be granted unless amendment would cause prejudice to the opposing party, is
3  sought in bad faith, is futile, or creates undue delay."  *Mammoth Recreations*, 975 F.2d at 607
4  (citation omitted).

5      "Not all of the factors merit equal weight. . . .  [I]t is the consideration of prejudice to the
6  opposing party that carries the greatest weight."  *Eminence Cap.*, 316 F.3d at 1052 (citation
7  omitted).  "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists
8  a *presumption* under Rule 15(a) in favor of granting leave to amend."  *Id.* (emphasis in original).

9      Courts may deny leave to amend "only if there is strong evidence of undue delay, bad faith
10 or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments
11 previously allowed, undue prejudice to the opposing party by virtue of allowance of the
12 amendment, [or] futility of amendment, etc."  *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma*
13 *Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))
14 (modification in original).

15 **III.  DISCUSSION**

16     The case management order issued on September 29, 2022 set May 19, 2023 as the
17 deadline to amend the pleadings.  ECF 45.  Chang must therefore first demonstrate that good
18 cause exists under Rule 16(b) to permit the proposed amendment seven months after the
19 May 19, 2023 deadline before showing that the amendment is proper under Rule 15.  *See*
20 *Mammoth Recreations*, 975 F.2d at 607-08.  Accordingly, the Court first analyzes whether Chang
21 has shown good cause under Rule 16(b) before turning to whether the amendment is proper under
22 Rule 15.

23     **A.  Good Cause under Rule 16**

24     The Court first analyzes whether good cause exists to permit the addition of the proposed
25 defendants, i.e., Cashman Opportunity Fund, Arrowside Fund LP, Cashman Family Investment I,
26 and Perseverus.

27     Good cause does not exist to allow the addition of the Cashman Opportunity Fund.  Chang
28 asserts that she did not discover the Cashman Opportunity Fund until Defendants produced the

1  operating agreement for a different entity, Arrowside Ventures, on October 17, 2023. ECF 80 at
2  10. According to Chang, the agreement revealed the existence of the Cashman Opportunity Fund,
3  "which was the funding investor for a Ventures investment completed in early December 2021,
4  just prior to [Chang] being ousted from Arrowside."[8] *Id.* Chang also asserts that the agreement
5  revealed that Arrowside Ventures still holds the investment. ECF 100 at 3. Chang seeks to add
6  the Cashman Opportunity Fund as a defendant for that reason. *Id.*

7  Defendants counter with an email from Copeman to Chang dated October 28, 2021, in
8  which the Cashman Opportunity Fund appears on an alternative asset list for Cashman Family
9  Enterprises. ECF 85-2. Chang does not dispute that she received the October 2021 email from
10 Copeman. Moreover, Chang herself acknowledges that "[i]t made sense that [the Cashman]
11 Opportunity Fund held an investment for [Arrowside] Ventures prior to [Arrowside] Venture's
12 formation because [Arrowside] Ventures did not yet exist." ECF 87 at 5.

13 With knowledge of the Cashman Opportunity Fund since October 28, 2021, and with
14 knowledge of how the entity operated prior to Arrowside Venture's formation, Chang's decision
15 to wait until December 29, 2023 to seek leave to add the Cashman Opportunity Fund as a
16 defendant cuts against a finding of good cause.

17 The Court likewise finds no good cause to allow the addition of Cashman Family
18 Investment I and Arrowside Fund LP as defendants. As to these entities, Chang asserts:

> Cashman Family Investment[] I funded approximately $22 million
> into Arrowside Fund LP, and has a 5% interest in Arrowside Fund
> GP, LLC which is owned by Carlos Cashman directly. Arrowside
> Fund, LP is funded in whole or in significant part by Defendant
> Cashman Family Investment I. [Arrowside] Fund LP, in turn,
> funded Defendant [Arrowside] Fund GP's investments and Cashman

---

[8] The operating agreement for Arrowside Ventures is dated January 1, 2022 and reflects an incorporation date of December 17, 2021. ECF 81-2 at 1. Chang speculates the agreement was likely backdated because it provides for Copeman's back pay for the period of July 1, 2021 through March 2022. ECF 80 at 9. Chang also contends that "[p]resumably, Cashman thought that backdating the agreement to closer in time to when his controversy with Chang commenced he would better protect his other assets from the instant litigation." *Id.* At deposition, when asked whether Arrowside Ventures was created in reaction to Chang's request for compensation, Cashman responded, "[y]es, mostly." ECF 86-4 at 3. He also testified: "[W]e felt it would be better, on legal advice, to form the entity and put the investments into it, that she had been around for while we discussed this." *Id.* at 2-3.

7

> completely dominates and controls Fund LP. It was not until after the parties completed significant discovery that [Chang] was able to unravel the knotted architecture of Defendant Cashman's many entities and their involvement in the instant litigation.

ECF 80 at 14.[9] Chang does not indicate when she learned about Cashman Family Investment I and Arrowside Fund LP. Instead, Chang generally contends that she "uncovered that both entities are completely controlled and dominated by Defendant Cashman as a means to fund Arrowside Capital." ECF 100 at 4. She claims she could not have uncovered "Cashman's complete disregard of the corporate form" before last fall. *Id.*

Defendants counter that Chang new about the funding plan concerning Arrowside Fund LP and Cashman Investment I since at least February 15, 2023, when they produced documents reflecting that. ECF 85 at 9. Chang conceded this at the March 14 hearing on the motion. For this reason, the Court finds that Chang's delay in seeking to add Arrowside Fund LP and Cashman Investment I precludes a finding of good cause.

There is, however, good cause to permit Chang to add Perseverus as a defendant and allow the related successor-in-interest liability allegations as to the entity. While Chang could have deposed Copeman and Cashman sooner, Defendants' argument that Cashman would have disclosed the existence of Perseverus if Chang had asked certain follow-up questions is self-serving speculation. It does not rebut the undisputed fact that Chang first learned about the entity on November 9, 2023, when she deposed Copeman. ECF 80 at 10. Copeman testified that Perseverus was created because "[t]he lawyers wanted to switch to a different entity" to "separate out the previously warehoused funds that ended up in Arrowside Ventures from future investments." ECF 81-4 at 2, 21. Based on this testimony and privilege log entries suggesting the use of a codename for the company,[10] Chang contends that Cashman created Perseverus "to

---

[9] To further illustrate this "knotted architecture," Chang points to Copeman's separation agreement, which provides that "Copeman cannot receive any distributions from Ventures or Perseverus until after Cashman Family Investments II is paid 1.5 times compensation for any legal fees or expenses relating to litigation or settlement of 'the Chang Issue.'" ECF 80 at 11.

[10] An amended privilege log served on October 21, 2023 references an entity called Arrowside Ventures II. ECF 81 ¶ 7, 81-7. Based on entries indicating discussions about the formation of the entity in early 2022, Chang contends that the entity became Perseverus and that Cashman departed from the Arrowside naming convention "in a brazen attempt to obfuscate its existence and to shield his assets from the reach of [this] lawsuit." ECF 80 at 12.

8

proceed with new investments under the same investment thesis [Chang] had mapped out . . . presumably, hoping to shield this new entity and its assets from being detected during the instant litigation." ECF 80 at 11. Chang asserts that Perseverus is a proper defendant because "Perseverus was based on the same investment strategy that [Chang] had laid out for Cashman in September 2021, with the same structure, and the same players minus [Chang]." ECF 80 at 12.

For these reasons, the Court finds good cause to allow the addition of Perseverus as a defendant and the related allegations of successor-in-interest liability as to the entity.[11] The Court does not find good cause to allow the addition of the Cashman Opportunity Fund, Arrowside Fund LP, or Cashman Family Investment I and therefore does not reach the question of whether to allow the addition of civil conspiracy, alter ego, or veil piercing allegations as to those entities. To the extent Chang seeks to add such allegations as to the currently named Defendants, Chang has not convinced the Court that there is good cause to permit them at this late stage. Therefore, the Court grants relief from the scheduling order to permit the addition of Perseverus as a defendant and successor-in-interest allegations as to that entity. Relief from the scheduling order is otherwise denied.

**B.     Leave to Amend under Rule 15**

Because the Court finds good cause to allow the addition of Perseverus as a defendant and to permit the addition of allegations of successor-in-interest liability as to that entity, the Court now analyzes whether those limited amendments are proper under Rule 15.

When analyzing the Rule 15 factors, prejudice is the factor that carries the most weight, and the burden of showing undue prejudice falls on the party opposing the proposed amendment. *See Eminence Cap.,* 316 F.3d at 1052. Here, Defendants assert that such prejudice exists because this case has been pending for two years, and discovery has been underway for one. ECF 85 at 8.

---

[11] The Court finds good cause to permit the addition of Perseverus as a defendant without regard to the parties' arguments about any related gamesmanship. The Court does not, therefore, reach the questions of whether Defendants had a duty to disclose Perseverus in their initial disclosures, whether discovery about the entity was outside the parameters the parties agreed to in their stipulation regarding electronically stored information, whether the documents that would have revealed the existence of the entity were responsive to Chang's document requests, or whether corporate disclosure statements made to the Court were sufficiently detailed.

9

Defendants claim that document productions total more than 14,000 pages,[12] argue that Chang has all the information she needs to pursue her claims, and contend that re-opening discovery will result in additional requests and costs that are not proportional to the needs of the case. *Id.*

While the Court appreciates that the demands of litigation impose burdens on each party, the attendant prejudice to Defendants in this case is not undue. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010) ("Neither delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice.") (citations omitted); *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 531 (N.D. Cal. 1989) (rejecting the argument that the proposed amendments were unduly prejudicial because they would require numerous depositions of witnesses who had already been questioned, additional document searches, more written discovery, and postponing the trial date). Moreover, the Court will allow only targeted discovery on the narrow amendments allowed, which will proceed on an accelerated timeline to minimize delay and guard against the risk of protracted litigation. The undue prejudice factor thus weighs in favor of granting leave to amend.

As to the undue delay factor, the "inquiry focuses on whether the plaintiff knew of the facts or legal bases for the amendments at the time the operative pleading was filed and nevertheless failed to act promptly to add them to the pleadings." *McFall v. Stacy & Witbeck, Inc.*, No. 14-CV-04150-JSC, 2016 WL 2851589, at *3 (N.D. Cal. May 16, 2016). Here, it is undisputed that Chang first learned about Perseverus on November 9, 2023. Chang then acted with reasonable diligence upon discovering that Perseverus existed and upon obtaining the testimony that provides the basis for the proposed successor-in-interest allegations. She promptly sought to meet and confer about the proposed amendment with Defendants, then filed her motion

---

[12] Defendants point to nothing in the record that substantiates the volume of documents produced in this litigation. The Court notes that both sides have generally done a poor job of complying with Civil Local Rule 7-5, which provides, in part: "Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record. Extracts from depositions, interrogatory answers, requests for admission and other evidentiary matters must be appropriately authenticated by an affidavit or declaration." Civil L.R. 7-5(a).

10

1    December 29, 2023, after Defendants declined to stipulate.  This is not undue delay.  *See McFall*,

2    2016 WL 2851589, at *3 ("Because Plaintiff moved expeditiously to amend upon receipt of the

3    emails . . . , there was no undue delay.").  This factor thus weighs in favor of granting leave to

4    amend.

5           The futility of amendment factor weighs in favor of denying leave to amend where "no set

6    of facts can be proved under the amendment to the pleadings that would constitute a valid and

7    sufficient claim[.]"  *See Ross v. AT&T Mobility, LLC*, No. 19-CV-06669-JST, 2020 WL 9848733,

8    at *4 (N.D. Cal. Dec. 18, 2020) (citations omitted).  However, "[d]enial of leave to amend on this

9    ground is rare.  Ordinarily, courts will defer consideration of challenges to the merits of a

10   proposed amended pleading until after leave to amend is granted and the amended pleading is

11   filed."  *Carranza v. City of San Pablo*, No. 4:20-CV-08443-SBA, 2022 WL 110647, at *4 (N.D.

12   Cal. Jan. 12, 2022) (internal quotations and citation omitted).  This is because "[t]he merits or

13   facts of a controversy are not properly decided in a motion for leave to amend and should instead

14   be attacked by a motion to dismiss for failure to state a claim or for summary judgment."

15   *LiveCareer Ltd v. Su Jia Techs. Ltd.*, No. 14-CV-03336-JST, 2015 WL 4089800, at *3 (N.D. Cal.

16   July 2, 2015) (internal quotations and citations omitted).

17          That is the case here.  Each party offers its reasons why Perseverus was created, i.e.,

18   whether it was intended to shield assets from any liability for Cashman's conduct towards Chang

19   or whether it was properly created as a separate entity for Cashman to conduct wholly separate

20   business dealings rather than a mere continuation of Arrowside Ventures.[13]  That dispute,

21   however, is not ripe for resolution on a motion for leave to amend and is thus not a basis on which

22   this Court may deny leave to amend.  *See L.B. v. W. Contra Costa Unified Sch. Dist.*, No. 16-CV-

---

[13] Successor liability attaches if:
> [T]he successor expressly or impliedly agrees to assume the subject liabilities . . . , (2) the transaction amounts to a consolidation or merger of the successor and the predecessor, (3) the successor is a mere continuation of the predecessor, or (4) the transfer of assets to the successor is for the fraudulent purpose of escaping liability for the predecessor's debts.

*CenterPoint Energy, Inc. v. Superior Ct.*, 157 Cal. App. 4th 1101, 1120 (2007).

11

1 04382-DMR, 2017 WL 3232484, at *6 (N.D. Cal. July 31, 2017) (declining to deny leave to

2 amend on futility grounds where factual disputes existed that could not be resolved on a Rule 15

3 motion); *Allen v. Bayshore Mall*, No. 12-CV-02368-JST, 2013 WL 6441504, at *5 (N.D. Cal.

4 Dec. 9, 2013) (rejecting futility arguments because they went "to the weight of the evidence, not

5 the futility of [the] proposed amendment"). Accordingly, the futility of amendment factor does

6 not preclude granting leave to amend.

7 Finally, given the factual disputes surrounding the creation of Perseverus, and Chang's

8 prompt actions following the discovery of the entity, the Court does not find that the proposed

9 amendments about Perseverus are brought in bad faith. Accordingly, this factor weighs in favor of

10 granting leave to amend.

11 On the record presently before the Court, the Rule 15 factors weigh in favor of permitting

12 Chang to add Perseverus as a defendant and amend her complaint to add allegations of successor-

13 in-interest liability as to the entity. To that extent, the motion for leave to amend is granted. The

14 motion is otherwise denied.

15 **IV.  CONCLUSION**

16 For the reasons set forth above, the Court grants the motion for leave to amend in part and

17 denies the motion in part. Chang must file her second amended complaint within 2 days of this

18 order. A revised case management scheduling order will issue by separate order.

19 Unless otherwise ordered by Chief Magistrate Judge Ryu: Chang may serve 5 additional

20 requests for production within 2 days of this order. Defendants' responses shall be due within 30

21 days of service of the requests for production. Cashman shall be made available for a further

22 deposition, of no more than 4 hours, within 2 weeks of service of Defendants' responses to

23 Chang's additional requests for production. The ESI date range is extended to March 15, 2023.

24 **IT IS SO ORDERED.**

25 Dated: March 18, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**