UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY CHANG,<br><br>    Plaintiff,<br><br>    v.<br><br>CARLOS CASHMAN, et al.,<br><br>    Defendants. | Case No. 22-cv-02010-AMO (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 82 |

The parties filed a joint discovery letter in which Plaintiff Stacy Chang moves to compel Defendants Carlos Cashman; Arrowside Ventures, LLC; Arrowside Capital, LLC; Arrowside Fund GP, LLC; and Cashman Family Investments II, LLC to respond to a single request for production ("RFP"). [Docket No. 82.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion to compel is denied.

**I.    BACKGROUND**

This case stems from an employment dispute between Plaintiff and Defendant Cashman. Plaintiff alleges that she "is an accomplished professional in the venture capital industry." She joined Founders Fund in 2017 where she worked as Chief of Staff. [Docket No. 109 (Second Am. Compl., "SAC") ¶¶ 1, 33.] In January 2020, third-party Thomas Copeman introduced Plaintiff to Cashman, the co-founder and CEO of Thrasio, which has been valued at $10 billion. *Id*. at ¶¶ 2, 35. In May 2021, Copeman told Chang that Cashman "wanted to create a new investment platform and raise a fund to work more closely with early-stage founders" and would provide $10 million of capital. *Id*. at ¶¶ 2, 37. Copeman "sought to gauge whether Chang was interested in joining [the new entity] as a partner." *Id*. at ¶ 38.

Plaintiff alleges that Cashman and Copeman subsequently recruited Plaintiff to join the new investment platform, officially named "Arrowside." *Id*. at ¶¶ 38-43. Starting in September

2021, "Cashman treated Chang as a full-time employee and partner in Arrowside" and the parties "mutually agreed and understood that Chang was now working for Cashman and Arrowside." *Id*. at ¶ 49.  Arrowside Capital, LLC "would employ Chang and all of the other partners, and provide services and benefits to all employees, including infrastructure, offices, and IT systems," and ownership of the entity would be split among the partners.  *Id*. at ¶ 8.  Based on statements from Cashman, Copeman, and another anticipated partner, Plaintiff "believed that she would receive carried interest from any investments she introduced to [Arrowside] Fund [GP]."  *Id*. at ¶¶ 44, 45.

On October 13, 2021, Plaintiff told Cashman and Copeman that she would be "winding down her responsibilities at Founders Fund and resigning" in the coming weeks.  *Id*. at ¶ 57.  Her last day at Founders Fund was November 30, 2021.  *Id*. at ¶ 15.  On December 10, 2021, Copeman told Plaintiff that she would no longer be part of Arrowside and offered her one-month's pay and carry interest for three of her funding deals.  *Id*. at ¶ 72.  She rejected this proposal.  *Id*.

Plaintiff filed the complaint in March 2022 against Defendants Cashman; Arrowside Capital, LLC; Arrowside Fund GP, LLC; Arrowside Ventures, LLC; and Cashman Family Investments II, LLC.  She filed the SAC in March 2024 and added Perseverus LLC as a defendant.  She alleges the following claims in the SAC: 1) fraudulent inducement; 2) negligent misrepresentation; 3) misrepresentations in violation of California Labor Code section 970; 4) breach of contract; 5) promissory estoppel; 6) unjust enrichment; 7) failure to pay wages upon separation of employment; 8) violation of California Business and Professions Code section 17200 et seq.; and 9) failure to reimburse expenses and losses in violation of California Labor Code section 2802.

Plaintiff now moves to compel Defendants to produce documents in response to request for production ("RFP") No. 18.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

2

|   |   |
|---|---|
| 1 | discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. |

2  Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in

3  evidence to be discoverable."  *Id*.  "Relevancy, for the purposes of discovery, is defined broadly,

4  although it is not without ultimate and necessary boundaries."  *Gonzales v. Google, Inc.*, 234

5  F.R.D. 674, 679-80 (N.D. Cal. 2006).  "While the party seeking to compel discovery has the

6  burden of establishing that its request satisfies relevancy requirements, the party opposing

7  discovery bears the burden of showing that discovery should not be allowed, and of clarifying,

8  explaining, and supporting its objections with competent evidence."  *Lofton v. Verizon Wireless*

9  *(VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015) (citing *La. Pac. Corp. v. Money Mkt. 1*

10  *Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

## III.   DISCUSSION

RFP No. 18 seeks "[a]ll settlement agreements, cease and desist letters, demand letters, and deposition testimony from Carlos Cashman in previous or threatened litigation involving Mr. Cashman, including in *Sasha Hoffman v. Thras.io Inc., et al*., Case No. 1:20-cv-12224-PBS (D. Mass.) and actual or threatened litigation involving OrionCKB."  Jt. Letter Ex. A.  Defendants made numerous objections to the RFP, including that it is "vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence."  They also argue that the request seeks privileged and/or confidential, proprietary materials.  *Id*.  However, the parties focus their discussion on the relevance of the requested materials and burden of production and do not address Defendants' other objections.  Accordingly, the court focuses on the parties' dispute regarding relevance.

Plaintiff contends that the complaint in *Sasha Hoffman v. Thras.io Inc., et al*. "accused Defendant Cashman of 'refus[ing] to provide [Plaintiff] with the fully earned, vested Thras.io equity repeatedly promised to her in return for her work in helping to get Thras.io off the ground.'"  Jt. Letter 2 (citation omitted).  According to Plaintiff, the complaint "goes on to detail repeated unfulfilled promises made by Mr. Cashman that are strikingly similar to those recounted in Plaintiff's Amended Complaint here."  *Id*.  As to the OrionCKB matter, Plaintiff contends that "Cashman testified at his deposition that his previous company, OrionCKB was threatened with

3

litigation related to 'employment and a position . . . there was a dispute over the eventual compensation that would have been due.'" *Id*. (quoting Cashman Dep. 43-44). According to Plaintiff, "Cashman failed to 'document[ ] properly' the employee's position, and the dispute was eventually settled after he received a demand letter." *Id*. (quoting Cashman Dep. 44-46).

Plaintiff contends that RFP No. 18 "seeks what should not amount to more than a handful of documents that are critical to this case, which include . . . one deposition transcript, two settlement agreements, and less than five letters." Jt. Letter 2. She argues that "[t]hese documents should confirm that Defendant Carlos Cashman engaged in nearly identical misconduct as that alleged by Plaintiff Chang in in [sic] the *Thras.io* and OrionCKB matters" and that she "anticipates these documents will therefore demonstrate his pattern of making employment promises he has no intention of maintaining." *Id*. Plaintiff further contends that the requested materials are relevant to "refut[ing] Defendant Cashman's insistent claims that he was unaware of the consequences of his oral promises to Plaintiff." *Id*. at 3. According to Plaintiff, Cashman's "previous experiences with employees who also believed they would be paid for their work starting a company with him, as the *Thras.io* Complaint alleges and the OrionCKB matter seems to address, would refute Mr. Cashman's claims of ignorance here" and "would significantly resolve the issue of whether Mr. Cashman has previously deceived employees as to their roles in start-up ventures . . . as he did with Plaintiff." *Id*.

Defendants dispute the relevance of the requested materials. They argue that the allegations in *Hoffman* related to the misclassification of the plaintiff as an independent contractor, which is not at issue in this lawsuit, and that the plaintiff's claims were "directed primarily at" individuals and entities other than Cashman." *Id*. at 4. They also argue that the OrionCKB matter "involved an employer/employee dispute over a job position, with an entirely different set of facts and circumstances." *Id*. According to Defendants, these two matters involved "entirely different facts, different players, and different companies" and are "plainly irrelevant." *Id*. at 3-4.

Plaintiff has not met her burden to show that documents responsive to RFP No. 18 are relevant to her claims. With respect to the *Hoffman* matter, Plaintiff contends that the complaint "detail[s] repeated unfulfilled promises made by Mr. Cashman that are strikingly similar to those

4

recounted in Plaintiff's Amended Complaint here" but does not describe the similarities between the two complaints. Nor does she explain how materials from *Hoffman* may "refute" Cashman's claims in this case "that he was unaware of the consequences of his oral promises to Plaintiff." The lack of support for her relevance argument is especially glaring since Plaintiff appears to have access to public filings in the *Hoffman* matter. For example, she submitted the first two pages of the complaint in *Hoffman* with a November 2023 discovery letter. [Docket No. 64-6.] Notably, the plaintiff in *Hoffman* alleges in the first paragraph of the complaint that "[t]his action seeks a remedy for Defendants' misclassification of Ms. Hoffman as an independent contractor . . ." *See id*. Plaintiff makes no misclassification claim in this case.

Plaintiff's relevance argument with respect to the OrionCKB matter is also speculative and conclusory. She provides few details, asserting only that "there was a dispute over the eventual compensation that would have been due" to an employee. *See* Jt. Letter 2. Defendants quote from Cashman's deposition, where he testified that "the general dispute was about employment and a position, the person was – had one agreement when they came to work for us, and then that changed when they took a different position. And, you know, it wasn't documented properly. So there was a dispute over the eventual compensation that would have been due." *Id*. at 4. Plaintiff does not explain the significance of this testimony or provide any details as to how the OrionCKB matter involved allegations that are similar to hers.

The cases upon which Plaintiff relies in the joint letter are very different from the issue here. *See* Jt. Letter 3. In *Matosich v. Wright Med. Grp., Inc.*, No. CV 19-16-M-DLC, 2020 WL 2216864, at *4 (D. Mont. May 7, 2020), a products liability case, the court ordered the defendant manufacturer to produce expert reports and deposition transcripts for experts "who have previously testified on [the defendant's] behalf in cases involving fractures of the same [hip implant] component," reasoning that the materials were "relatively well-calculated to lead to impeachment evidence." Here, Plaintiff does not explain how "settlement agreements, cease and desist letters, demand letters, and deposition testimony from Carlos Cashman" in the *Hoffman* and OrionCKB matters could "lead to impeachment evidence." In *Garner v. Amazon.com, Inc.*, No. C21-0750 RSL, 2023 WL 6038011, at *2 (W.D. Wash. Sept. 15, 2023), the plaintiffs sought

5

materials related to a Federal Trade Commission investigation of defendant Amazon regarding "Amazon's storage, transmittal, and/or sharing of Alexa audio recordings/transcripts," which was "conduct that [was] clearly at issue" in the instant lawsuit. Specifically, one of the plaintiffs' claims was "based in part on allegations that the Alexa device was intentionally designed to intercept and record as many conversations and collect as much data as possible (including location data), that defendants retain (and sometimes disclose) recordings even when they know the recordings were unintended and unauthorized, and that Amazon has misled consumers by failing to accurately describe what it does with the data it collects in order to protect market share." *Id*. at *3. In this case, even though Plaintiff appears to have at least some access to information about the *Hoffman* matter and was able to examine Cashman regarding the OrionCKB matter, she does not explain how those matters involve the same or similar conduct at issue in this case, other than the fact that they appear to involve employment-related disputes. This connection is too generalized to support a determination that the requested information is relevant to Plaintiff's case.

As Plaintiff has failed to satisfy her burden to demonstrate the relevance of materials responsive to RFP No. 18, the motion to compel is denied.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel is denied.

**IT IS SO ORDERED.**

Dated: April 8, 2024

_____
Donna M. Ryu
Chief Magistrate Judge

