UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY CHANG,<br><br>    Plaintiff,<br><br>v.<br><br>CARLOS CASHMAN, et al.,<br><br>    Defendants. | Case No. 22-cv-02010-AMO (DMR)<br><br>**ORDER ON PLAINTIFF'S MOTION TO COMPEL**<br><br>Re: Dkt. No. 121 |

The parties filed a joint discovery letter in which Plaintiff Stacy Chang moves to compel Defendants Arrowside Ventures, LLC and Perseverus, LLC to produce communications withheld under the attorney-client privilege. [Docket No. 121.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, Plaintiff's motion is granted.

**I.  BACKGROUND**

In this action, Plaintiff sues Defendants Carlos Cashman; Arrowside Capital, LLC; Arrowside Fund GP, LLC; Arrowside Ventures, LLC ("Ventures"); Cashman Family Investment II LLC; and Perserverus LLC ("Perseverus") for claims related to Defendant Cashman's alleged recruitment of Plaintiff as a partner at an investment fund and subsequent wrongful termination.

At issue are communications between third party Tom Copeman, the former investment manager for Ventures and Perseverus, and Defendants' corporate counsel, Wilchins Cosentino & Novins LLP, that are dated between December 8, 2022 and February 10, 2023.[1]  Jt. Letter 1. The privilege log identifies the communications as emails "to provide legal advice," "for the purpose of providing legal advice," "regarding legal advice," or "to gather legal advice" regarding various matters. *See* Jt. Letter Ex. A (Privilege Log). Defendants claim the communications are protected

---

[1] Plaintiff describes "eleven communications" at issue in the joint letter but lists 17 entries on the privilege log. Jt. Letter 1 & n.1.

by the attorney-client privilege.

Plaintiff argues that the communications are not protected from disclosure because Copeman was no longer employed by Ventures or Perseverus at the time of the communications. Plaintiff points to the severance agreement between Copeman and those two entities; it states that Copeman's "last day of employment" with Ventures and Perseverus was December 1, 2022. According to Plaintiff, communications between a corporation's attorney and a former employee are not protected by the attorney-client privilege. Jt. Letter 2.

Defendants assert that the provision in the severance agreement regarding Copeman's last date of employment is ambiguous. They contend that Copeman was actually employed by Defendants until February 10, 2023, the date he signed the severance agreement, citing a declaration in which Copeman states that he continued to perform job duties as Defendants' investment manager until February 10, 2023. *Id*. at 3. Defendants argue that even if the court concludes that Copeman's employment ended on December 1, 2022, the attorney-client privilege still shields the communications. *Id*.

The court ordered Defendants to submit the severance agreement and Copeman declaration referenced in the joint letter. [Docket No. 124.] Defendants timely filed the supplemental materials. [Docket No. 125 (Copeman Decl. May 31, 2024), 125-1 (Severance Agreement).]

## II. LEGAL STANDARDS

State law governs resolution of issues arising out of the invocation of the attorney-client privilege in this diversity action. Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). The parties agree that California law applies here. *See* Jt. Letter 2, 3.

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code § 952. A "confidential communication" is:

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other that those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary

2

>for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code § 952. "The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 734 (2009). "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Id*. at 733. Once the proponent of the privilege "establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco*, 47 Cal. 4th at 733.

The party claiming a privilege bears the burden to show that the evidence it seeks to suppress falls within the terms of an applicable statute. *Great Am. Assurance Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009); *HLC Props., Ltd. v. Superior Ct.*, 35 Cal. 4th 54, 59 (2005). Under California law, the scope of attorney-client privilege must be construed narrowly. *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 632 (N.D. Cal. 2019) (citations omitted).

### III. DISCUSSION

Plaintiff does not challenge that the disputed communications were made "in confidence" or that the communications were not disclosed to third parties. *See* Cal. Evid. Code § 952. The question is whether an attorney-client relationship existed between Copeman and Defendants' corporate counsel at the time of the communications. Thus, the key threshold issue is whether Copeman was employed by Defendants at the time of the communications. *See* Jt. Letter 2, 3.

Copeman executed a "Severance and General Release Agreement" with Ventures and Perseverus on February 10, 2023. Cashman signed the agreement on behalf of Ventures and Perseverus on February 9, 2023. *Id*. at 6. Severance Agreement 6. The "Employment End Date" section states: "Employee [Copeman] agrees that Employee's last day of employment with the

1  Company [Ventures and Perseverus] was December 1, 2022 ('End Date'). Employee agrees that
2  he has paid [sic] all salary due through the End Date and that all expense reimbursements have
3  been paid." *Id*. at 1, § 1. Section 14, titled "Severability, Entire Agreement; No Oral
4  Modifications," states, "[t]his Agreement constitutes a single integrated agreement expressing the
5  Parties [sic] entire understanding regarding the subjects it addresses . . . [a]s such it supersedes all
6  oral and written agreements and discussions that occurred before the time Employee signs it . . .
7  [t]his Agreement may be modified only in a writing signed by the Employee and Carlos B.
8  Cashman." *Id*. at 4-5, § 14.

9  Plaintiff argues that the Severance Agreement "plainly identifies December 1, 2022 as the
10 end date of Copeman's employment." Accordingly, she contends, Copeman was not Defendants'
11 employee at the time of the disputed communications. Jt. Letter 2. Defendants respond that the
12 Severance Agreement is ambiguous regarding Copeman's last date of employment and that
13 "extrinsic evidence is admissible to clarify the ambiguity." *Id*. at 3. They submit Copeman's
14 declaration in which he states that he "performed job duties" as "the Investment Manager of both
15 Arrowside Ventures, LLC, and Perseverus, LLC until February 10, 2023." Copeman Decl. ¶ 1.
16 According to Copeman, even though the Severance Agreement "stated that [his] last date of
17 employment would be made retroactive to December 1, 2022 . . . [he] continued to serve as the
18 Investment Manager" for Defendants until he signed the Severance Agreement on February 10,
19 2023. *Id*. at ¶ 2. He contends that his "last date of employment was made retroactive to
20 December 1, 2022 for accounting purposes." *Id*. at ¶ 3.

21 Plaintiff argues that the court should not consider Copeman's declaration under the parol
22 evidence rule. Jt. Letter 2. Neither party explained which law governs the interpretation of the
23 Severance Agreement or briefed the applicable standard.

24 California law applies to federal diversity cases arising in California. *Allstate Ins. Co. v.
25 Smith*, 929 F.2d 447, 449 (9th Cir. 1991). California Code of Civil Procedure § 1856(a) provides
26 that "[t]erms set forth in a writing intended by the parties as a final expression of their agreement
27 with respect to the terms included therein may not be contradicted by evidence of a prior
28 agreement or of a contemporaneous oral agreement." This rule is known as the parol evidence

4

rule. "When the parties to a written contract have agreed to it as an 'integration'—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms." *Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968). "One exception to the parol evidence rule is that extrinsic evidence may be introduced to explain the meaning of ambiguous contractual language," but "[p]arol evidence is admissible only to prove a meaning to which the contractual language is 'reasonably susceptible;' not to flatly contradict the express terms of the agreement." *Consolidated World Inv., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 379 (1992) (quoting *Winet v. Price*, 4 Cal. App. 4th 1159, 1165, 1167 (1992)). For example, "if the contract calls for the plaintiff to deliver to defendant 100 pencils by July 21, 1992, parol evidence is not admissible to show that when the parties said 'pencils' they really meant 'car batteries' or that when they said 'July 21, 1992' they really meant 'May 13, 2001'." *Consolidated*, 9 Cal. App. 4th at 379.

The decision whether to admit extrinsic evidence involves a two-step process. "First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party." *Winet*, 4 Cal. App. 4th at 1165. If the court decides the language is "reasonably susceptible" to the urged interpretation, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. *Id.* However, "[e]xtrinsic evidence offered to prove an interpretation to which a document is not reasonably susceptible is inadmissible." *In re Marriage of Dawley*, 17 Cal.3d 342, 353, fn. 7 (1976).

Defendants do not clearly spell out their argument in the joint letter or map it onto applicable California law. They appear to argue that the language in the Settlement Agreement that Copeman's "last day of employment with [Ventures and Perseverus] was December 1, 2022" means that Copeman's "employment end date was made retroactive to December 1, 2022 upon execution of the agreement for accounting purposes," citing Copeman's declaration in support. *See* Jt. Letter 3. Having provisionally considered Defendants' extrinsic evidence, the court finds that the disputed provision of the Severance Agreement is not reasonably susceptible to Defendants' interpretation. Nothing in the Severance Agreement references retroactivity or indicates that Copeman's employment continued after the end date specified in that agreement.

5

To the contrary, the Severance Agreement clearly and unambiguously identifies December 1, 2022 as the "Employment End Date" and states that all of Copeman's salary and expenses had been paid "through the End Date." Moreover, the Severance Agreement states, "[t]his Agreement constitutes a single integrated agreement expressing the Parties [sic] entire understanding regarding the subjects it addresses . . . [a]s such it supersedes all oral and written agreements and discussions that occurred before the time Employee signs it," and that the agreement "may be modified only in a writing signed by" Copeman and Cashman. Severance Agreement 4-5, § 14. Defendants have offered no such writing. In sum, Copeman's declaration is inadmissible to "flatly contradict the express term" in the Settlement Agreement that his "last day of employment with [Ventures and Perseverus] was December 1, 2022." *See Winet*, 4 Cal. App. 4th at 1167 (parol evidence is not admissible "to flatly contradict the express terms of the agreement").

Having concluded that the Severance Agreement unambiguously provides that Copeman's last day of employment with Defendants was December 1, 2022, the court now turns to the issue of whether his communications with Defendants' corporate counsel after that date are protected by the attorney-client privilege.

California Evidence Code section 951 defines a "client" for purposes of the privilege as "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity . . ." A "person" includes "a natural person, firm, association, organization, partnership, business trust, corporation, limited liability company, or public entity." Cal. Evid. Code § 175. A "'lawyer' means a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." Cal. Evid. Code § 950. "[A] corporation can be a client for the purposes of the attorney-client privilege," but "the corporate client can only communicate to its attorney through an 'authorized representative.'" *Connolly Data Sys., Inc. v. Victor Techs., Inc.*, 114 F.R.D. 89, 93 (S.D. Cal. 1987) (citing *D.I. Chadbourne, Inc. v. Superior Court*, 60 Cal. 2d 723, 732 (1964)); Cal. Evid. Code § 951).

In *D.I. Chadbourne*, the California Supreme Court set forth "basic principles" to "determine whether the natural person who speaks is speaking from the status of a [corporate]

1    client . . . or is merely a witness whose unprivileged communication someone else is seeking to
2    suppress under a claim of privilege." 60 Cal. 2d at 732, 736-38. In *Connolly*, the court examined
3    whether "a former employee can constitute an 'authorized representative' [of the corporate client]
4    so that his or her communications with the corporation's attorney are privileged." 114 F.R.D. at
5    93. After considering several relevant *D.I. Chadbourne* principles, the court concluded that the
6    former employee's (Hanson) communications were not protected by the privilege. The court
7    reasoned that Hanson was "not the natural person to speak for the corporation. He is no longer
8    employed by the corporation and his words and acts are no longer binding on [his former
9    employer]." *Id*. at 93-94. Therefore, Hanson could not "presently be considered 'such a person
10   who would ordinarily be utilized for communication to the corporation's attorney." *Id*. at 94. The
11   court also noted that "nothing in the record indicate[d] that Hanson was required to speak" to the
12   corporate attorney or that he was "the only one who has relevant knowledge" of a settlement
13   agreement between his former employer and the plaintiff in the litigation. *Id*. Accordingly, the
14   court held that the defendant did not establish that "Hanson was anything more than a witness to
15   the matter that is involved in this litigation." *Id*.

16   *Connolly* also held that California Evidence Code section 951 dictates the same
17   conclusion. Section 951 defines a "client" for purposes of the privilege as "a person who, directly
18   or *through an authorized representative*, consults a lawyer . . . " Cal. Evid. Code § 951 (emphasis
19   added). The court held that the defendant had not established that Hanson was "*an authorized
20   representative* of the corporation when he spoke to its attorney," and concluded that "only
21   communications to and from authorized representatives, that is agents or employees, of
22   corporations would be privileged" under section 951 and *D.I. Chadbourne*. *Connolly*, 114 F.R.D.
23   at 94-95 (emphasis in original).

24   Plaintiff argues that under *Connolly*, the attorney-client privilege does not shield
25   Copeman's communications with Defendants' corporate counsel that post-date December 1, 2022,
26   his last date of employment.

27   Defendants acknowledge *Connolly*. Jt. Letter 3. They argue that even if the court finds
28   that Copeman was their "former employee" as of December 1, 2022, the court should consider the

7

principle from *D.I. Chadbourne* that "where the employee's connection with the matter grows out of his employment to the extent that his communications are required in the ordinary course of the corporation's business, the employee is no longer an independent witness, and his communications are that of the employer." *Id*. (citing *D.I. Chadbourne*, 60 Cal. 2d at 737 (principle no. 4)). According to Defendants, "Copeman's confidential communications with Defendants' corporate counsel were required in the ordinary course of business (i.e., to process his separation from employment), and accordingly, his communications to corporate counsel are made on behalf of Ventures and Perseverus." *Id*. Defendants' argument is not persuasive, as there is no evidence that 1) the disputed communications between Copeman and corporate counsel were for the purpose of "process[ing] his separation from employment" or 2) that Copeman was "required" to speak to corporate counsel following his December 1, 2022 Employment End Date. *See Connolly*, 114 F.R.D. at 94 (discussing principle no. 4, noting "nothing in the record indicates that Hanson was required to speak" to the corporate attorney).

Defendants also do not address California Evidence Code section 951 or explain how Copeman was their "authorized representative" after December 1, 2022.

In sum, Defendants have failed to satisfy their burden of establishing that the disputed communications were "made in the course of an attorney-client relationship." *See Costco*, 47 Cal. 4th at 733 ("The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship."). Accordingly, the communications are not protected from disclosure by the attorney-client privilege.

//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel is granted. Defendants shall produce all communications between Copeman and Defendants' corporate counsel that post-date December 1, 2022 and that were withheld based on the attorney-client privilege within three days of the date of this Order.

**IT IS SO ORDERED.**

Dated: July 1, 2024



Donna M. Ryu
Chief Magistrate Judge