WELTY, WEAVER & CURRIE, P.C.
Jack W. Weaver (Cal. Bar No. 278469)
MORGAN, BROWN & JOY, LLP
Gregory A. Manousos (admitted *pro hac* vice)
Jeffrey T. Collins (admitted *pro hac* vice)
3554 Round Barn Blvd., Suite 300
Santa Rosa, CA 95403
Telephone: (707) 433-4842
jack@weltyweaver.com
gmanousos@morganbrown.com
jcollins@morganbrown.com

*Attorneys for Defendants Carlos Cashman,*
*Arrowside Ventures, LLC Arrowside Capital,*
*LLC, Arrowside Fund GP, LLC, Cashman*
*Family Investments II LLC, and Perseverus,*
*LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY CHANG,<br><br>                    Plaintiff,<br><br>        v.<br><br>CARLOS CASHMAN, ARROWSIDE CAPITAL, LLC, ARROWSIDE FUND GP, LLC, ARROWSIDE VENTURES, LLC, CASHMAN FAMILY INVESTMENTS II LLC, and PERSEVERUS, LLC<br><br>                    Defendants. | Case No. 3:22-cv-02010-AMO<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Araceli Martinez-Olguin<br>San Francisco Courthouse, 19th Floor, Courtroom 10<br>Hearing Date: Thurs. November 7, 2024<br>Time: 2:00 p.m.<br>Action filed: March 1, 2022<br>Trial Date: March 31, 2025 |

United States District Court
Northern District of California

1

# **TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ................................................................................................ ii

3

I.    NOTICE OF MOTION.............................................................................................. 1

4

II.   MOTION .................................................................................................................. 1

5

III.  POINTS AND AUTHORITIES ................................................................................ 2

6

   A.   Statement of Material Facts .......................................................................... 3

7

   B.   Authority and Argument................................................................................ 9

8

      1.   Summary Judgment Standard ............................................................... 9

9

      2.   There Was No Enforceable Promise to Support a Contract or Estoppel Claim
           (Fourth and Fifth Causes of Action) ................................................... 10

10

      3.   Because Plaintiff Cannot Demonstrate the Existence of an Employment Contract or a Promise for
           a Partnership Position, Her Wage Claims Consequently Fail (Seventh and Ninth Causes of
           Action)................................................................................................ 11

11

12

13

      4.   Plaintiff Cannot Demonstrate Justifiable Reliance (First, Second, and Fourth Causes of Action) 12

14

      5.   There Was No Misrepresentation Because the Parties Understood that any Partnership Position
           was Contingent on the Formation of a Fund (First, Second, and Third Causes of Action) ......... 14

15

      6.   Plaintiff Cannot Demonstrate that Defendants Intended to Induce Reliance or Persuade Her to
           Relocate (First, Second, and Third Causes of Action) ........................................... 15

16

17

      7.   Plaintiff Has Suffered No Damages (All Causes of Action) ................................... 16

18

      8.   Plaintiff's Unjust Enrichment Claim is Deficient (Sixth Cause of Action) ............... 16

19

      9.   Plaintiff Cannot Establish a Violation of the Business and Professions Code §§ 17200 *et seq.*, or,
           in the Alternative, Plaintiff's Claim for Attorneys' Fees Should be Stricken........................... 17

20

21

      10.  Even if Plaintiff Succeeds on her Seventh Cause of Action, She is Not Entitled to Penalties Under
           Cal. Lab. Code §§ 203 and 210 ............................................................... 20

22

23

      11.  Perseverus is Not Liable to Plaintiff as a Successor in Interest to Arrowside Ventures.............. 21

24

IV.   CONCLUSION .................................................................................... 24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                              **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 9

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC,*
    158 Cal. App. 4th 226 (2007)................................................................... 12, 14, 15

*Asnaashari v. PNY Techs., Inc.*, No. C 13-1308 PJH,
    2013 WL 2403605 (N.D. Cal. May 31, 2013) ............................................ 15

*Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915 (2013) .................... 10, 12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)..................... 18

*CenterPoint Energy, Inc. v. Superior Court*, 157 Cal. App. 4th 1101 (2007) .............................. 22

*Conservatorship of Whitley*, 50 Cal. 4th 1206 (2010)........................................................ 18

*Finch v. Brenda Raceway Corp.,* 22 Cal. App. 4th 547 (1994) ................................. 14, 15

*Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104 (C.D. Cal. 2015) ............................... 23

*Hecimovich v. Encinal Sch. Parent Tchr. Org.*, 203 Cal. App. 4th 450 (2012)............................ 10

*Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289 (2005)................................. 12, 14, 15, 16

*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945) ........................................................ 22

*Jelin v. San Ramon Valley Unified Sch. Dist.,*
    No. 16-CV-05986-EDL, 2018 WL 11234174 (N.D. Cal. July 5, 2018)................................... 11

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)......................................... 17

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000)............................................... 16, 17

*Lefkowtiz v. Scytl USA*, No. 15-CV-05005-JSC, 2016 WL 537952
    (N.D. Cal. Feb. 11, 2016)............................................................................ 24

*Luck v. S. Pac. Transportation Co.*, 218 Cal. App. 3d 1 (Ct. App. 1990........................................ 19

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) .................................... 10

*Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056 (2024) .................................... 20

*Nat'l Dollar Stores v. Wagnon*, 97 Cal. App. 2d 915 (1950) ................................................ 10

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 201 F.3d 1099 (9th Cir. 2000)................................... 9

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                           Case No. 3:22-cv-02010-AMO

**Cases**                                                               **Page(s)**

*Orthotec, LLC v. Reo Spineline, LLC*, 438 F. Supp. 2d 1122 (C.D. Cal. 2006) ............................. 23

*Owens Generator Co. v. H. J. Heinz Co.*, 23 F.R.D. 121 (N.D. Cal. 1958) ................................. 22

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ............................................................ 21

*Rachford v. Air Line Pilots Ass'n Int'l*, 375 F. Supp. 2d 908 (N.D. Cal. 2005) ............................. 10

*Ray v. Alad Corp.*, 19 Cal. 3d 22 (1977) ....................................................................................... 22

*United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1233 (E.D. Cal. 1997) ........................ 23

*Washington Mutual, Inc. v. U.S.,* 636 F.3d 1207 (9th Cir. 2011) ..................................................... 9

**Statutes**

Business and Professions Code §§ 17200 *et seq.* .......................................................................... 17

Cal. Lab. Code § 1197.5 ................................................................................................................. 21

Cal. Lab. Code § 201.3 ................................................................................................................... 21

Cal. Lab. Code § 203 ...................................................................................................................... 20

Cal. Lab. Code § 204 ...................................................................................................................... 21

Cal. Lab. Code § 204.1 ................................................................................................................... 21

Cal. Lab. Code § 204.11 ................................................................................................................. 21

Cal. Lab. Code § 204.2 ................................................................................................................... 21

Cal. Lab. Code § 204b .................................................................................................................... 21

Cal. Lab. Code § 205 ...................................................................................................................... 21

Cal. Lab. Code § 205.5 ................................................................................................................... 21

Cal. Lab. Code § 210 ................................................................................................................. 20, 21

Cal. Lab. Code § 970 ................................................................................................................. 14, 15

Cal. Lab. Code § 98 ........................................................................................................................ 21

Cal. Lab. Code § 98.3 ..................................................................................................................... 21

Code of Civil Procedure § 1021.5 ............................................................................................. 18, 19

**Statutes**                                                                                          **Page(s)**

Code of Civil Procedure § 410.10 ................................................................... 22

Fed. R. Civ. P. 56(a) ...................................................................................... 9

**Regulations**

Cal. Code Regs. tit. 8, § 11040(2)(H) ............................................................ 11

Cal. Code Regs. tit. 8, § 13520 ....................................................................... 20

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                     Case No. 3:22-cv-02010-AMO

## I.     NOTICE OF MOTION

Defendants, Carlos Cashman, Arrowside Ventures, LLC ("Arrowside Ventures"), Arrowside Capital, LLC ("Arrowside Capital"), Arrowside Fund GP, LLC, Cashman Family Investment II, LLC, and Perseverus, LLC ("Perseverus" (jointly "Defendants"), by their attorneys, Morgan, Brown & Joy, LLP, hereby notices the instant Motion for Summary Judgment or, in the alternative, Partial Summary Judgment (the "Motion"), to be heard on Thursday, November 7, 2024 at 2:00 p.m. in the San Francisco Courthouse of the Northern District of California, Courtroom 10, by the Honorable Araceli Martinez-Olguin, or as soon thereafter as counsel may be heard.

## II.     MOTION

Pursuant to Federal Rule of Civil Procedure 56, Defendants move the Court for an order as follows:

1.  Entering judgment for Defendants on all nine Causes of Action in their entirety because Plaintiff cannot establish the elements of any of her claims.

2.  Entering judgment for Perseverus, LLC on all causes of action because it is not a successor in interest to Arrowside Ventures, LLC.

3.  Alternatively, ruling that if Plaintiff succeeds on the merits of the Seventh Cause of Action, she is not entitled to penalties under Cal. Lab. Code §§ 203 and 210 as a matter of law.

4.  Alternatively, ruling that if Plaintiff succeeds on the merits of the Eighth Cause of Action, she is not entitled to attorneys' fees as a matter of law.

This Motion is supported by the Points and Authorities herein, the accompanying Declaration of Gregory Manousos, the evidence attached, and the pleadings and records on file herein.

### III.   POINTS AND AUTHORITIES

Plaintiff's entire complaint is premised on the theory that she quit her administrative position with Founders Fund ("FF") in November 2021 in reliance on a promise of being made a partner in a venture fund to be sponsored by Carlos Cashman, damaging her in an amount exceeding $10 million. The evidence adduced in this case, however, undermines Plaintiff's case at every turn. The uniform testimony and evidence demonstrates that Plaintiff had no prospects for advancement at FF and was already planning to leave her position. Plaintiff began working with Cashman's associate, Tom Copeman on potential investments while still at FF without any expectation of compensation or future employment. While the possibility of a fund anchored with an initial investment by Cashman was discussed, Plaintiff acknowledged in sworn testimony that she "remember[s] very distinctly" Cashman emphasizing something that "nothing is done until it's done" and that she confirmed that she "got it."

Indeed, the evidence confirms that there was no understanding as to any terms of future employment for Plaintiff. Cashman never confirmed the amount he would commit to a future fund led by Copeman with Plaintiff, or that he would commit any amount at all. The parties never agreed to any salary or carried interest for any individual. No venture fund was ever formed. The only "evidence" that Plaintiff relies upon for the "terms" of future employment is a "budget" she drafted and proposed herself, but to which neither Cashman nor anyone else ever agreed. Notwithstanding the highly tenuous and preliminary nature of their business relationship, Plaintiff quit her job at FF on November 11, 2021. ██████████████████████████████████████████████████████████████████████████████████████████████████████████ In any event, Plaintiff confirmed that she left FF for her own reasons and that she "left nothing on the table." This has been confirmed by the fact that FF accelerated the vesting of her carried interest upon her departure. Ultimately, in December 2021, Copeman decided the timing was not right to start and raise a fund. ███████████████████████████████████████████████████████████████████████████████████████████

In short, the evidence confirms (1) that Cashman never provided any commitment to provide

employment to Plaintiff or start a fund, (2) no term of employment was ever agreed upon, (3) Plaintiff knew the "Arrowside" project was preliminary and tentative, (4) Plaintiff left her prior job for her own independent reasons and with her carried interest vested, and (5) Cashman had no reason, much less intent, to induce Plaintiff to quit her job when he plainly had not decided to invest in a fund.  For these reasons, Defendants are entitled to summary judgment.

Beyond Plaintiff's inability to prove the central facts that underpin all of her claims, Defendants are entitled to summary judgment on specific claims for reasons described below.

### A.  Statement of Material Facts

Plaintiff worked as an executive assistant to a partner at FF beginning in 2017. *See* Manousos Decl. Ex.[1] A at 7:14 – 22. Prior to joining FF, Plaintiff did not have any background in venture capital investing. *See id.* at 8:25 – 9:3. Plaintiff ultimately was given a position as a Chief of Staff, in which she supported investment managers with tracking consumer retail companies and attending pitch meetings. *See id.* at 6:13 – 14, 18:3 – 7, 18:17 – 22, 23:15 – 20.

Plaintiff met Tom Copeman in 2019, and shortly after, they began an ongoing dialogue where they discussed topics such as early-stage venture investing and deal flow, which is common in the venture capital space. *See* Ex. B at 53:9 – 54:7. They also began to share leads and insights with each other to enable each parties' respective companies to analyze and potentially invest in leads shared by one another. *See* Ex. A at 57:1 – 21. Plaintiff acknowledges that she did not expect compensation related to sharing investment insights during this time. *See id.* at 57:8 – 12.

During Plaintiff's employment at FF, she spoke with her manager, Lauren Gross, about how "there were certain limitations as to where [she] could grow at [FF]." *See id*. at 42:2 – 10. Plaintiff acknowledged that she "had hit a ceiling" at FF. *See id*. at 46:22 – 25. ████████████

████████████████████████████████████████████████

████████████████  ████████████████████████████████

████████████████████████████████████████████████

---

[1] All exhibits cited herein are exhibits to the concurrently filed Declaration of Gregory Manousos ("Manousos Decl.").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT          Case No. 3:22-cv-02010-AMO

1

████████████████████████████████

2      Copeman introduced Plaintiff to Carlos Cashman, who at the time was CEO of a company

3   called Thrasio, in January 2020. *See* Ex. B at 55:7 – 14, 57:14 – 16. After this introduction, she,

4   Copeman, and Cashman "would from time-to-time trade notes on investment opportunities and make

5   introductions to other connections in the startup ecosystem." *See* Complaint, ¶ 2.

6      In or around March 2021, Cashman told Copeman that he thought "it would be fun to maybe

7   start a fund, but in the meantime," Copeman could help him with private investments. *See* Ex. E at

8   69:20 – 24. Copeman and Plaintiff stayed in touch with each other during this time, and in Summer

9   2021, had a conversation where they discussed the idea of potentially working together, and knew that

10  Plaintiff was exploring opportunities outside of FF. *See* Ex. B at 57:22 – 58:13. During that summer,

11  while everyone maintained their day jobs, Plaintiff and Copeman looked at potential deals together

12  and explored "the possibility of what-ifs and raising a fund." *See id.* at 58:14 – 20; Ex. A at 58:25 –

13  59:11.

14      In June 2021, Plaintiff, Copeman, and Cashman met via Zoom. *See* Ex. A at 122:4 – 6, 123:5

15  – 22. Plaintiff understood that the purpose of the meeting was to, *for the first time*, talk to Cashman

16  about a potential fund and "what his vision for it was." *See id.* at 122:12 – 14 (emphasis added). She

17  understood that "[t]here was *potentially* an opportunity to [raise a fund]." *See id.* at 123:9 – 14

18  (emphasis added). During the meeting, Plaintiff presented a slide deck that included generic

19  observations using publicly available data about the state of the venture capital industry. *See* Ex. A at

20  123:20 – 124:21; Ex. F; Ex. G at p. 24. Plaintiff did not share any unique investment thesis during the

21  meeting. Indeed, Plaintiff acknowledged in her Complaint that Cashman already had a "stellar

22  reputation within the early stage investing community." *See* Complaint, ¶ 3.

23      During these initial conversations in June, Copeman recalled that Cashman discussed the

24  *possibility* of committing $10 million to a potential fund, but it was all part of "hypothetical,

25  theoretical, exploratory conversations." *See* Ex. B at 69:16 – 70:13. The conversations between

26  Plaintiff, Copeman, and Cashman were "intended as colleagues and friends exploring an opportunity

27  together, whether we could get something off the ground." *See id.* at 80:2 – 6. These conversations

28

4

1    were so exploratory that Copeman and Cashman had not discussed compensation or how the fund

2    would be structured. *See id.* at 39:3 – 5, 42:5 – 16, 43:1 – 21. Plaintiff was entirely unable to state how

3    many hours per week she performed what she considered work for Arrowside, however, she stated

4    that she worked over 50 hours, and potentially as many as 60 hours during certain weeks for FF at this

5    time. *See* Ex. A at 103:16 – 23, 104:15 – 106:5, 107:5 – 11.

6            In September 2021, while Plaintiff was already on the East Coast for other business, she

7    sought a meeting with Copeman and Cashman in Boston (the *only* time Plaintiff and Cashman met

8    in person), where Plaintiff presented a second slide deck "discussing an idea of what a fund could

9    look like." *See id.* at 174:18 – 175:2; Ex. B at 92:8 – 93:14; Ex. H. No employment offer was

10   discussed or made during this meeting (or at any subsequent point). Copeman recalled, however,

11   that there was a discussion about *if a fund was raised*, Plaintiff would be a general partner in the

12   fund. *See* Ex. B at 101:20 – 102:12. Plaintiff acknowledged that she "remember[s] very distinctly"

13   Cashman saying things like, "nothing is done until it's done," a fund is not official until the funds

14   are "like, wired," and that she communicated back, "got it." *See* Ex. A at 129:5 – 14. Cashman

15   also specifically stated in the meeting "We may do nothing. I may want to put all my money in

16   crypto." *See* Ex. E at 21:18 – 25. Despite her acknowledgement that she never had a written

17   employment agreement to join any "Arrowside" entity that might be formed at some point,

18   Plaintiff proceeded as if she was promised a partnership in an existing entity. *See id.* at 126:5 – 24.

19           After this meeting, Plaintiff and Copeman continued to communicate regularly and analyze

20   deals without Cashman, just as they had before the possibility of raising a fund was discussed. *See* Ex.

21   B at 104:17 – 106:14. Plaintiff refers to these initial discussions as "work" for "Arrowside Ventures"

22   (which did not exist) that she performed in California. *See* <u>Complaint</u>, ¶¶ 22, 50. Although Plaintiff

23   alleges that she traveled at least once outside of California to perform "work on behalf of Arrowside,"

24   *see id.* at ¶ 107, Plaintiff has not alleged that she would need to relocate for the "position." During this

25   time, Plaintiff, on her own accord, created and paid for accounts on various communications platforms,

26   such as Trello and Slack. *See* Ex. B at 120:16 – 121:1; Ex. E at 215:20 – 217:15.

27           In October 2021, Plaintiff created what she called an initial, one-page "budget," for

28   
5

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT          Case No. 3:22-cv-02010-AMO

"Arrowside," in which she assigned herself a proposed salary of $225,000. *See* Ex. A at 127:9 – 11; Ex. I. The simplistic, so-called "budget"[2] listed only one fixed expenditure, $562,500 in annual payroll, in addition to "Variable" expenditures with entries for meals, computers/supply, travel, software/internal tools, accounting, and legal all totaling an annual cost of $856,500. *See* Ex. I; Ex. G, at pp. 24-25. Plaintiff's "budget" did not attribute a source to any of the expenditures and failed to include essential expenses any venture capital fund must shoulder, such as audit fees. *See* Ex. I.; Ex. G, at pp. 33 – 34. Copeman recalls telling Plaintiff that "*if everything was approved and it was going to move forward*, [her salary] would have been $225,000" and that "Carlos was okay with [this salary] going in the budget," however, Cashman did not ever formally approve any budget. *See* Ex. B at 143:25 – 144:6, 144:25 – 145:4, 146:2 – 10 (emphasis added); Ex. E at 168:4 – 15. In fact, on December 7, 2021, Cashman modified the so-called "budget" with red notes, clearly indicating that there was no offer or acceptance of an offer of employment with an approved salary. *See* Ex. A at 142:5 – 22; Ex. J.

In November 2021, Plaintiff sent Copeman an email in which she generically discussed the two main methods that venture capital firms use to distribute carry, which is the "[p]ercentage of the profits that the general partner receives." *See* Ex. K; Ex. B at 43:3 – 6. However, although potential fee and carry structures had been discussed in some capacity, the fundamental question of whether to calculate carried interest on a fund-level or deal-by-deal basis was never answered or resolved. *See* Ex. A at 184:7 – 13; Ex. G, at p. 29. The parties also had not performed several other tasks required to raise a venture capital fund, such as creating an executive summary that encapsulates their investment thesis; how they have worked together in the past; what sorts of investment results their work has produced; and how they intend to capitalize on all of that in the future; a pitch deck that enumerates the team; strategy; and investment terms, and a track record containing their investment portfolio. *See* Ex. G, at pp. 23, 27 – 29. In addition, no investment closing documents had been

---

[2] Cashman noted that the so-called budget was a "very loose model" or a "draft 0.1" of "if we do something, here is what it might look like on a very simple scale," acknowledging that there were many missing expenses in the model. *See* Ex. E at 170:16 – 21, 172:22 – 174:3.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                                    Case No. 3:22-cv-02010-AMO

prepared and there was no pre-marketing outreach to potential institutional investors, without which the parties would have been wholly unprepared to have any meaningful discussions with investors needed to raise the fund. *See id*. at pp. 28 – 30.

Plaintiff herself on multiple occasions acknowledged how far the parties were from raising a venture fund. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

Despite the lack of any clarity or agreement on the structure of a potential fund, compensation and carry arrangements, and whether a fund would be raised at all, Plaintiff put in her notice to resign from FF on November 11, 2021. *See* Ex. A at 202:21 – 24. ████████████████████

████████████████████████████████████████████████

██████████ As previously stated, Plaintiff's resignation from FF had been long coming; indeed, Plaintiff had been telling people as early as August 2021 that she was attempting to transition out of FF. *See* Ex. L, at p. 5. Leading up to Plaintiff's resignation from FF, she told both Cashman and Copeman that she was leaving nothing of significance on the table by leaving FF. *See* Ex. B at 238:8 – 17; Ex. E at 198:10 – 25. Plaintiff did, in fact, leave nothing on the table, as FF accelerated her carry in funds she had interest in when she left, allowing her to obtain the full value of the carry she would have earned had she remained at FF for the respective funds' six-year vesting period. *See* Ex. A at 71:2 – 73:6.

Due to declining market conditions, the second half of 2021 was a poor time to launch a new fund, a fact Cashman personally observed. *See* Ex. G at p. 30; Ex. E at 72:11 – 73:6. For example, on December 7, 2021, Cashman sent Copeman and Plaintiff an email enclosing an article about a tech startup that conducted a mass layoff, opining that "[t]hese are the signs of [the bubble] starting to burst, combined with the pullback last week/weekend in stocks and crypto. . . I feel it coming . . . ." *See* Ex.

7

M. In or around December 2021, Copeman told Cashman that he did not think that it was a good time to raise money for another venture fund and Cashman agreed. *See* Ex. E at 73:3 – 8, 297:6 – 18.

On December 8, 2021, Copeman informed Plaintiff about their reservations about creating a venture fund. *See* Ex. A at 189:21 – 191:2. ███████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Later that day, Plaintiff flew from California to New York, purportedly on both Arrowside business (although Copeman did not know this) and to attend a personal event. *See* Ex. A at 191:17, 192:7 – 14; Ex. B at 180:18 – 21. After Plaintiff landed, she spoke on the phone with Copeman about the decision to not raise a fund. *See* Ex. A at 193:6 – 24. ██████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ The next day, Copeman confirmed to Cashman that Plaintiff "said to [him] many times, she was leaving FF [*sic*] no matter what and even said that the other day and she said just yesterday that she knew there was always a risk of this not panning out for her. . . ." *See* Ex. Q. Over the next few weeks, the parties talked, and, out of generosity, Cashman considered helping Plaintiff by paying her some carry on deals and cash, however, ██████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████ *See* Ex. E at 232:22 – 233:11, 234:9 – 21; ████████

After informing Plaintiff that a venture capital fund would not be formed, Cashman and Copeman formed Arrowside Ventures simply to house the investments made in 2021. *See* Ex. E at 278:18 – 279:3; Ex. S. Only 16 direct investments and three fund investments are referred to in Arrowside Ventures' LLC Operating Agreement. *See* Ex. S at pp. 39 – 40. All of Arrowside Ventures' investments were made using Cashman's own capital. *See* Ex. E at 227:14 – 21. Subsequent to Cashman's decision not to raise a fund, he made two additional direct investments and one additional

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                    Case No. 3:22-cv-02010-AMO

1   fund investment, and created a new entity called Perseverus to house those investments. *See* Ex. T at

2   p. 40.[3] Plaintiff did not source or otherwise have any involvement in any of these investments. These

3   investments were made with Cashman's capital and through his and Copeman's contacts, not pursuant

4   to any overarching investment strategy created by Plaintiff; indeed, one of the companies was run by

5   one of Cashman's fraternity brothers. *See* Ex. V at 26:2 – 27:5, 29:4 – 11, 49:23 – 50:13, 51:7 – 16,

6   52:11 – 22.

### B.  Authority and Argument

#### 1.  Summary Judgment Standard

9        Summary judgment is proper where the moving party demonstrates "that there is no genuine

10  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

11  P. 56(a). Substantive law determines which facts are "material," and "[o]nly disputes over facts that

12  might affect the outcome of the suit under the governing law will properly preclude the entry of

13  summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, the

14  dispute must be "genuine," meaning "the evidence is such that a reasonable jury could return a verdict

15  for the nonmoving party." *Id.*

16       A moving defendant may obtain summary judgment by showing that the nonmoving plaintiff

17  does not have enough evidence of an essential element of a claim to carry her ultimate burden of

18  persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 201 F.3d 1099, 1102 (9th Cir. 2000).

19       Summary judgment is proper not just with regard to entire claims and defenses, but also parts

20  of claims or defenses. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying

21  each claim or defense – or the part of each claim or defense – on which summary judgment is sought.")

22  A motion for partial summary judgment is governed by the same standards as a motion for summary

23  judgment. *Washington Mutual, Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).

24

25

26  _____

27  [3] According to Plaintiff's Complaint, Perseverus is a limited liability company organized under the laws of Delaware with its principal place of business in Massachusetts, and with no members that are citizens of California. *See* <u>Complaint</u>, ¶¶ 28 – 29.

28
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                    Case No. 3:22-cv-02010-AMO

**2.   There Was No Enforceable Promise to Support a Contract or Estoppel Claim (Fourth and Fifth Causes of Action)**

Plaintiff cannot establish her promissory estoppel or breach of contract claims because she cannot demonstrate the existence of an enforceable promise or offer.[4] To establish a cause of action for breach of contract, Plaintiff initially must prove the existence of a binding contract. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) (citation omitted). The elements of a binding and enforceable contract are offer, acceptance, and consideration. *See Hecimovich v. Encinal Sch. Parent Tchr. Org.*, 203 Cal. App. 4th 450, 475 (2012). "Where the parties have not agreed to all the essential terms, no binding contract exists." *Rachford v. Air Line Pilots Ass'n Int'l*, 375 F. Supp. 2d 908, 937 (N.D. Cal. 2005) (citation omitted).

Similar to a contract's requirement of an offer, a promissory estoppel claim requires a clear and unambiguous promise by a promisor. *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 929 (2013). "Estoppel cannot be established from . . . preliminary discussions and negotiations." *Nat'l Dollar Stores v. Wagnon*, 97 Cal. App. 2d 915, 919 (1950).

Plaintiff cannot establish either her breach of contract or promissory estoppel claims because she cannot demonstrate the existence of a promise or offer. The record demonstrates that there was no promise or offer of a partnership, or at a minimum, that any alleged "promise" or "offer" was rife with contingencies and ambiguities. While the parties discussed the series of "what ifs" and the possibility of creating a venture capital fund, there was only an understanding that *if* such a fund were to be created, Plaintiff may have a partnership position in the fund. *See* Ex. B at 58:14 – 20, 101:20 – 102:12. However, Plaintiff acknowledged that she "remember[s] very distinctly" Cashman saying things like,

---

[4] Due to overlapping elements of several of Plaintiff's claims, Defendants address the overlapping elements to avoid undue repetition while providing the Court with case law to fully brief it on each distinct cause of action. Defendants then brief the remaining claims and alternative arguments in subsequent subsections.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT                                 Case No. 3:22-cv-02010-AMO

"nothing is done until it's done" and that a fund is not official until the funds are "like, wired," and that she communicated back, "got it." *See* Ex. A at 129:5 – 14. ████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

Further, there could not have been a valid offer to accept given that the alleged fund's carry structure and Plaintiff's salary were not agreed upon. *See* Ex. A at 184:7-13; Ex. J. The parties had not agreed to all (or even any) of the essential terms of a contract, and therefore, no binding contract or clear and ambiguous promise existed. Accordingly, Plaintiff's breach of contract and promissory estoppel claims fail.

### 3. Because Plaintiff Cannot Demonstrate the Existence of an Employment Contract or a Promise for a Partnership Position, Her Wage Claims Consequently Fail (Seventh and Ninth Causes of Action)

As previously discussed, Plaintiff cannot demonstrate that she was promised a partnership position in a venture fund or that a binding contractual relationship existed between her and Defendants. Accordingly, Plaintiff's claims for wages due upon termination of employment and reimbursement for employment-related expenditures fail.

Plaintiff's claims for wages due upon termination of employment and expense reimbursement both require the existence of an employer-employee relationship. *See Jelin v. San Ramon Valley Unified Sch. Dist.*, No. 16-CV-05986-EDL, 2018 WL 11234174, at *13 (N.D. Cal. July 5, 2018) (among other elements, Plaintiff must demonstrate that "[Defendants owe] Plaintiff wages under the terms of the employment . . . ."); Cal. Lab. Code § 2802(a) ("[a]n *employer* shall indemnify his or her *employee* for all necessary expenditures or losses incurred by the *employee* in direct consequence of the discharge of his or her duties . . . .") (emphasis added). *See also* Cal. Code Regs. tit. 8, § 11040(2)(H) (an employer is any person "who directly or indirectly . . . employs or exercises control over the wages, hours, or working conditions of any person.").

11

Plaintiff cannot establish that Defendants violated either Cal. Lab. Code §§ 201, 202, or 2802(a) because she did not have an employment relationship with Defendants. As previously stated, as is common in the venture capital industry, the parties collaborated about the possibility of working together and raising a fund. However, there was no understanding between the parties that an employment relationship was being created (and, indeed, Plaintiff retained her job at FF for virtually the entire time), there was no written employment agreement, no agreement about salaries and the fund carry structure, and the parties were not anywhere near close to raising the fund for which she purportedly would have worked. *See* Ex. A at 126:5 – 8, 184:7 – 13; Ex. G at pp. 23, 27-30; Ex. J. Defendants did not employ or exercise control over Plaintiff's wages, hours, or working conditions. Instead, Plaintiff's efforts to participate in the potential raising of a fund were done in the spirit of entrepreneurship and a potential business partnership, as happens all of the time in the venture capital industry, and she participated voluntarily and during her free time while she maintained full-time employment. Because Plaintiff was not employed by Defendants, summary judgment is warranted on her claims under Cal. Lab. Code §§ 201, 202, and 2802(a).

### 4.  Plaintiff Cannot Demonstrate Justifiable Reliance (First, Second, and Fourth Causes of Action)

Plaintiff also cannot establish her first, second, or fourth Causes of Action because she cannot demonstrate that she justifiably relied on any misrepresentations or promises made by Defendants.

Plaintiff's fraudulent inducement, negligent misrepresentation, and promissory estoppel claims all require her to demonstrate reasonable or justifiable reliance. *See Bushell*, 220 Cal. App. 4th at 929 (promissory estoppel claim requires reasonable reliance); *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) (negligent misrepresentation claim requires justifiable reliance); *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294 (2005) (fraudulent inducement claim requires justifiable reliance). "[A] party plaintiff's misguided belief or guileless

12

action in relying on a statement on which no reasonable person would rely is not justifiable reliance

… If the conduct of the plaintiff in the light of [her] own intelligence and information was manifestly

unreasonable, … [s]he will be denied recovery." *Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 54 (Ct.

App. 1988) (quotation omitted).

Plaintiff cannot demonstrate that she justifiably relied on any of her preliminary discussions

with Defendants by "spending six months helping to found Arrowside" and "leaving her position at

[FF]." <u>Complaint</u>, ¶¶ 93, 101, 119. Plaintiff's networking and analyses of potential investment

opportunities were similar to the informal lead exchanging she did with Copeman prior to Arrowside

becoming a concept. *See* Ex. B at 53:16 – 54:7, 58:14 – 20; Ex. A at 57:1 – 21, 58:25 – 59:11. █████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████   To the extent Plaintiff alleges

that she assumed that a formal employment relationship existed between her and Defendants based on

these exploratory conversations and resigned from FF based on these conversations, her reliance was

unreasonable. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Accordingly, Plaintiff cannot demonstrate that she justifiably relied on any representations allegedly

made by Defendants, precluding her fraudulent inducement, negligent misrepresentation, and

promissory estoppel claims.

**5. There Was No Misrepresentation Because the Parties Understood that any Partnership Position was Contingent on the Formation of a Fund (First, Second, and Third Causes of Action)**

Plaintiff cannot demonstrate that any misrepresentations were made about the prospect of a partnership position at a venture fund because the parties knew that any potential partnership position was contingent on a venture fund being raised, which was never guaranteed.

Three of Plaintiff's nine Causes of Action require a misrepresentation with varying levels of intent. *See Apollo Cap. Fund, LLC*, 158 Cal. App. 4th at 243 (negligent misrepresentation claim requires a misrepresentation without reasonable ground for believing it to be true); *Hinesley*, 135 Cal. App. 4th at 294 (fraudulent inducement claim requires a misrepresentation with scienter of knowledge of its falsity); *Finch v. Brenda Raceway Corp.,* 22 Cal. App. 4th 547, 553 (1994) (Cal. Lab. Code § 970 claim requires a knowingly false misrepresentation).

Assuming *arguendo* that Defendants offered Plaintiff a partnership position in a venture fund (which Defendants contest), there is simply no evidence that the offer was a misrepresentation with the requisite level of intent required for any of the three Causes of Action. Plaintiff argues that Cashman never intended to follow through on his alleged September 2021 partnership offer (Complaint, ¶¶ 5 – 6) because in *December 2021*, he "attempt[ed] to get Chang to voluntarily quit . . . and when that did not work . . . pull[ed] the offer . . . ." Complaint, ¶¶ 90, 98, 106. Plaintiff entirely fails to show how Cashman's alleged actions in December 2021 demonstrate that he did not intend to follow through on a partnership offer allegedly made several months prior. Conversely, the record demonstrates that Defendants worked to determine whether raising a venture capital fund was feasible, but ultimately determined it was not feasible and/or desirable due to external market conditions. *See* Ex. E at 72:11 – 73:8, 296:23 – 297:18; Ex. B at 187:15 – 188:6. Accordingly, because Plaintiff cannot demonstrate that Cashman offered her a partnership position at all, much less misrepresented such an offer either knowingly or without reasonable ground for believing it to be true, her first three Causes

14

1   of Action fail.

2   **6. Plaintiff Cannot Demonstrate that Defendants Intended to Induce Reliance or Persuade Her to Relocate (First, Second, and Third Causes of Action)**

3

4   Plaintiff cannot establish either of her first three Causes of Action because she cannot

5   demonstrate that Defendants intended to induce her reliance or persuade her to relocate her residence.

6   Initially, Plaintiff's Cal. Lab. Code § 970 claim fails because such a claim requires the alleged

7   misrepresentation about the employment position to be made with the intent to persuade her to change

8   her residence to take the position, which she cannot show. *See Finch,* 22 Cal. App. 4th at 553. Plaintiff

9   "has not (and cannot) allege that [s]he was required to relocate [her] residence." *See Asnaashari v.*

10  *PNY Techs., Inc.*, No. C 13-1308 PJH, 2013 WL 2403605, at *2 (N.D. Cal. May 31, 2013). Instead,

11  Plaintiff's Complaint merely alleges that her work on behalf of Arrowside caused her to travel on one

12  or two occasions. *See* Complaint, ¶ 107. Plaintiff acknowledges that she understood that she would be

13  working for "Arrowside" from California, which alone is fatal to her claim. *See* Complaint, ¶ 50.

14  Moreover, her Complaint is devoid of any allegation that any Defendant induced or even asked her to

15  change her residence at any time. The record establishes that both times Plaintiff traveled outside of

16  California to purportedly perform work for "Arrowside," her trips were planned around other

17  commitments. *See* Ex. A at 174:18 – 175:2, 192:7 – 14. Put differently, Plaintiff only traveled outside

18  of California to allegedly perform work on behalf of "Arrowside" on her own accord and when

19

20  convenient due to coinciding, nearby commitments. Accordingly, Plaintiff cannot state a claim under

21  Cal. Lab. Code § 970.

22  Plaintiff also cannot demonstrate in the first instance that Defendants "inten[ded] to induce

23  Chang to assist in the creation of Arrowside," (Complaint, ¶¶ 92, 100), as is required for her to state

24  either a fraudulent inducement or negligent misrepresentation claim. *Apollo Cap. Fund, LLC*, 158 Cal.

25

26  App. 4th at 243 (negligent misrepresentation claim requires an intent to induce reliance); *Hinesley,*

27

28

15

135 Cal. App. 4th at 294 (fraudulent inducement claim requires an intent to induce reliance). The

record demonstrates that "Arrowside" as originally envisioned (i.e., as a venture capital fund), was

never created. *See e.g.* Ex. E at 131:22 – 132:2; Ex. S. Instead, Arrowside Ventures was formed only

to house the investments made by Cashman in 2021. *See* Ex. B at 245:2 – 15; Ex. S. The evidence

demonstrates that Cashman wished to explore the possibility of raising a venture capital fund and may

have entertained Plaintiff as a partner if it was feasible to do so. However, market conditions outside

of his control rendered it implausible to raise the fund. As there is no evidence that Cashman intended

to induce Plaintiff's reliance to create a venture capital fund, Plaintiff's fraudulent inducement and

negligent misrepresentation claims fail.

### 7.   Plaintiff Has Suffered No Damages (All Causes of Action)

All of Plaintiff's claims fail because she cannot demonstrate that she has suffered any

damages. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████ She also

made clear to Copeman and Cashman that she left nothing of significance "on the table" when

leaving FF, which was correct given that FF accelerated Plaintiff's carry when she resigned. *See* Ex.

A at 71:2 – 73:6; Ex. B at 238:8 – 17; Ex. E at 198:10 – 25. Since Plaintiff was planning to leave

FF regardless of whether she would have a partnership position in a venture capital firm, did not

lose out on anything of significance in doing so, and was aware that there was no commitment to

raising a fund, Plaintiff did not suffer any damages. Accordingly, all of Plaintiff's claims fail.

### 8.   Plaintiff's Unjust Enrichment Claim is Deficient (Sixth Cause of Action)

To support an unjust enrichment claim, Plaintiff must establish: (1) the receipt of a benefit;

and (2) unjust retention of the benefit at the expense of another. *See Lectrodryer v. SeoulBank*, 77 Cal.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT          Case No. 3:22-cv-02010-AMO

App. 4th 723, 726 (2000).

Initially, Plaintiff vastly overstates and speculates on the "significant monetary benefit" her efforts conferred upon Defendants. "Arrowside" as allegedly conceptualized was never created, so to the extent Plaintiff alleges that she worked to found "Arrowside," the efforts were for naught. What remains is only a handful of investments for which Plaintiff provided feedback, and a few investments funded exclusively by Cashman that Plaintiff helped to source. However, those investments in early-stage companies (many of which fail) have not realized, and may never realize, any return, much less a significant return to which Plaintiff would have been entitled carry had the venture fund been raised. The retention of such benefits, to the extent they even exist, is clearly not unjust particularly where Cashman made the investments with his own capital – bearing the full risk of the investment – and offered Plaintiff compensation for her time and carry for the deals she was involved with, which she declined. *See* Ex. E at 227:14 – 21, 234:9 – 21; Ex. V at 29:1 – 11. Plaintiff also cannot demonstrate that either Arrowside Ventures' or Perseverus' investments were made due to any unique "investment thesis" created by Plaintiff. Accordingly, Plaintiff cannot state a claim for unjust enrichment.

### 9. Plaintiff Cannot Establish a Violation of the Business and Professions Code §§ 17200 *et seq.*, or, in the Alternative, Plaintiff's Claim for Attorneys' Fees Should be Stricken

#### a. Defendants Did Not Violate the Business and Professions Code

Business and Professions Code §§ 17200 *et seq.* prohibits unfair competition, including unlawful, unfair, and fraudulent business acts. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). However, Plaintiff only seeks to establish a UCL violation through the unlawful or unfair business practice prongs. *See* Complaint, ¶ 137 ("Because of Cashman and Arrowside's unfair and unlawful business practices, Chang is entitled to . . . relief . . . ."). To establish an "unlawful practice" under the UCL, Plaintiff must demonstrate that Defendants engaged in a business practice that is forbidden by law. *See Korea Supply Co.*, 29 Cal. 4th at 1143 (citations and

quotations omitted). As argued elsewhere, none of Defendants' conduct was unlawful.

Nor was Defendants' conduct "unfair." Plaintiff must establish that Defendants engaged in conduct that: (1) threatens an incipient violation of an antitrust law; (2) violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law; or (3) otherwise significantly threatens or harms competition. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Plaintiff alleges in a conclusory manner that "Cashman and Arrowside's business practices violated [the UCL] by unfairly competing through violations of state law . . . ." <u>Complaint</u>, ¶ 136. But, rather than undertake any effort to explain how Defendants' actions harmed competition, Plaintiff calls Defendants' practices "unfair" *because* they violated wage provisions of the Labor Code, not any antitrust or competition law. *Id*. Accordingly, Plaintiff cannot proceed under the "unfair practice" prong of the UCL, and her UCL claim cannot survive summary judgment.

### b. Even if Plaintiff Can Establish a Violation of the UCL, she is Not Entitled to Attorneys' Fees in Connection with Any Violation as a Matter of Law

Assuming only for purposes of argument that Plaintiff can establish a violation of the UCL, she is not entitled to attorneys' fees based on such violation as a matter of law. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for attorneys' fees in her UCL claim. See <u>Complaint</u>, ¶ 137.

Plaintiff alleges that she "should receive an award of attorneys' fees" under CCP § 1021.5. *Id*. "[E]ligibility for section 1021.5 attorney fees is established when (1) plaintiffs' action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." *Conservatorship of Whitley*, 50 Cal. 4th 1206, 1214 (2010) (internal citations and quotations omitted).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                    Case No. 3:22-cv-02010-AMO

1
2
3
4
5

"The financial burden of private enforcement requirement means that an award of attorney fees . . . is only appropriate when the cost of the claimant's legal victory transcends his or her personal interest—i.e., when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his or her individual stake in the matter." *Luck v. S. Pac. Transportation Co.*, 218 Cal. App. 3d 1, 30 (Ct. App. 1990), *reh'g denied and opinion modified* (Mar. 23, 1990) (citation omitted).

6
7
8
9
10
11

The first two elements of the test are easily dispatched. Plaintiff has not, and cannot, identify how her action will result in the enforcement of an important right affecting the *public* interest as her UCL claim is only based on her *own* alleged harm. This Action is not intended to confer a significant benefit on the general public or a large class of persons. Rather, Plaintiff filed this Action for her pecuniary benefit alone.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

With respect to the final prong, this Action is not one where the necessity and financial burden of private enforcement warrants an attorneys' fees award. In her Complaint, Plaintiff requests judgment in an amount *exceeding $10 million*, plus interest, restitution, costs and disbursements, among other relief. *See* Complaint, p. 31:3 – 11. According to Plaintiff's attorneys' fees expert, as of January 2024, Plaintiff's counsel incurred approximately $465,655 in attorneys' fees and $31,655.50 in expenses and anticipates that they will continue to accrue through trial. *See* Ex. U at p. 7. Even if Plaintiff's attorneys' fees are to double or triple throughout the pendency of this litigation, if she secures a judgment over $10 million at trial, the costs associated with such a legal victory clearly will not transcend her own personal interest. *See Luck*, 218 Cal. App. 3d at 8, 30 (finding that plaintiff's legal victory did not transcend her personal interest where she received a $485,042 award). Plaintiff plainly did not institute this Action to significantly further the public interest, but rather with an expectation that she would receive a judgment that would make her litigation expenditures worthwhile. Accordingly, Plaintiff's request for attorneys' fees under Code of Civil Procedure Section 1021.5 should be stricken.

28

**10. Even if Plaintiff Succeeds on her Seventh Cause of Action, She is Not Entitled to Penalties Under Cal. Lab. Code §§ 203 and 210**

**a.   Plaintiff is Not Entitled to a Civil Penalty Under Cal. Lab. Code § 203 Because Any Violations Were Not Willful**

Cal Lab. Code § 203(a) provides that "[i]f an employer willfully fails to pay . . . in accordance with Sections 201 . . . [or] 202, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." "However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." *See* Cal. Code Regs. tit. 8, § 13520. "A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Id*.

Assuming *arguendo* that Plaintiff is owed wages by Defendants, Plaintiff is still not entitled to waiting time penalties under Section 203 because there is a good faith dispute that Plaintiff is not owed wages. Defendants maintain that there was no employment relationship between Defendants and Plaintiff, which is supported by the lack of an employment agreement, Plaintiff's full-time employment during nearly the entirety of the period relevant to this Action, ███████████ ███████████████████████████████████████████████ ███████  *See* Ex. A at 104:15 – 105:2, 107:5 – 11, 126:5 – 8; █████  If Defendants' defenses are successful, Plaintiff would be precluded from recovery. Accordingly, regardless of the ultimate outcome of Plaintiff's claims under Cal. Lab. Code §§ 201 and 202, Plaintiff is not entitled to relief under Cal. Lab. Code § 203. *See Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056, 1065 (2024) ("Under long established law, an employer cannot incur civil or criminal penalties for the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                    Case No. 3:22-cv-02010-AMO

willful nonpayment of wages when the employer reasonably and in good faith disputes that wages

are due.").

### b. Plaintiff is Not Entitled to a Civil Penalty Under Cal. Lab. Code § 210 Because Such Remedy is Only Available for Certain, Inapplicable Wage Violations in an Action Through the Labor Commissioner

Cal Lab. Code § 210(a) provides that "every person who fails to pay the wages of each

employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 204.11, 205, 205.5, and 1197.5,

shall be subject to a penalty . . . ." "The penalty shall either be recovered by the employee as a

statutory penalty pursuant to Section 98 or by the Labor Commissioner as a civil penalty through

the issuance of a citation . . . ." Cal. Lab. Code § 210(b). Cal. Lab. Code § 210(a) provides an avenue

of relief for the following categories of employees: temporary service employees; employees paid

on a semi-monthly basis; employees paid on a weekly basis; employees of vehicle dealers; exempt

employees who work over 40 hours in a calendar week; employees licensed under the Barbering

and Cosmetology Act; agricultural and domestic employees; and employees subjected to wage

discrimination due to their sex. *See* Cal. Lab. Code §§ 201.3, 204, 204b, 204.1, 204.2, 204.11, 205,

205.5, and 1197.5.

Plaintiff does not allege in her Complaint that she falls under any of these categories, and

the record evidence demonstrates that she does not. In addition, any penalties recovered under Cal

Lab. Code § 210 are properly recovered through an action by the Labor Commissioner, not a private

civil action. *See* Cal. Lab. Code §§ 98 and 98.3. Plaintiff is not entitled to relief under Cal Lab. Code

§ 210.

### 11. Perseverus is Not Liable to Plaintiff as a Successor in Interest to Arrowside Ventures

### a. This Court Does Not Have Personal Jurisdiction Over Perseverus

Plaintiff bears the burden of demonstrating that the Court may properly exercise jurisdiction

over Perseverus. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (internal citation

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                                    Case No. 3:22-cv-02010-AMO

1   omitted). In a diversity action, such as this one, California substantive law governs the Court's

2   analysis. *Owens Generator Co. v. H. J. Heinz Co.*, 23 F.R.D. 121, 122 (N.D. Cal. 1958) (citation

3   omitted). California's long-arm statute authorizes personal jurisdiction to the extent permitted by the

4   Due Process Clause of the Constitution. Code of Civil Procedure § 410.10. Due process requires that

5   a defendant must have sufficient "minimum contacts" with the forum state that "maintenance of the

6   suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

7   *Washington,* 326 U.S. 310, 316 (1945).

8       It is undisputed that this Court does not have general jurisdiction over Perseverus, so Plaintiff

9   must demonstrate that the Court has specific jurisdiction over Perseverus. "Specific jurisdiction exists

10  if: (1) the defendant has purposefully availed itself of forum benefits with respect to the matter in

11  controversy; (2) the controversy is related to or arises out of the defendant's contacts with the forum;

12  and (3) the assertion of jurisdiction would comport with fair play and substantial justice." *CenterPoint*

13  *Energy, Inc. v. Superior Court*, 157 Cal. App. 4th 1101, 1117 (2007) (internal quotations and citations

14  omitted). Plaintiff has not alleged any facts to demonstrate that this Court has specific jurisdiction over

15  Perseverus.

16      "Successor liability is a well settled concept in the area of personal jurisdiction determinations.

17  In a case raising liability issues, a California court will have personal jurisdiction over a successor

18  company if (1) the court would have had personal jurisdiction over the predecessor, and (2) the

19  successor company effectively assumed the subject liabilities of the predecessor." *Id*. at 1120 (internal

20  citations omitted).

21      As a general rule, a corporation purchasing the assets of another corporation does not assume

22  the predecessor's liabilities. *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977). However, there are four

23  exceptions that allow for successor in interest liability. "(1) [T]he successor expressly or impliedly

24  agrees to assume the subject liabilities . . ., (2) the transaction amounts to a consolidation or merger of

25  the successor and the predecessor, (3) the successor is a mere continuation of the predecessor, or (4)

26  the transfer of assets to the successor is for the fraudulent purpose of escaping liability for the

27  predecessor's debts." *CenterPoint*, 157 Cal. App. 4th at 1117, citing *Ray*, 19 Cal. 3d at 28.

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                    Case No. 3:22-cv-02010-AMO

In opposition to Defendants' Partial Motion to Dismiss (Dkt. No. 114), Plaintiff did not contest that she failed to allege any facts to proceed under the first two prongs of the successor-in-interest test. *See* Dkt. No. 114 at p. 5, fn. 1; Dkt. No. 118. The Court further dismissed Plaintiff's successor-in-interest claim under the "mere continuation" theory, but did not address the "fraudulent purpose" prong. *See* Dkt. No. 123, p. 3:2 – 7. Accordingly, Plaintiff can only establish that Perseverus is a successor in interest to Arrowside Ventures if she can establish the final prong. To do so, Plaintiff would need to prove that Arrowside Ventures transferred all or substantially all of its assets to Perseverus for the "fraudulent purpose" of avoiding liability. *See Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1134-35 (C.D. Cal. 2015) (declining to find successor in interest liability under a fraudulent purpose theory where a plaintiff failed to allege a transfer of all of a predecessor's assets to a successor to avoid liability).[5] She cannot.

Initially, Arrowside Ventures did not transfer *any* assets to Perseverus, which alone precludes Plaintiff's successor in interest claim. *See e.g.*, *Gerristen*, 116 F. Supp. 3d at 1134-35 (fraudulent purpose prong); *Orthotec, LLC v. Reo Spineline, LLC*, 438 F. Supp. 2d 1122, 1134 (C.D. Cal. 2006) (same).

Assuming *arguendo* that Plaintiff can demonstrate the existence of a qualifying "transfer," Perseverus is still not a successor in interest to Arrowside Ventures because any transfer was not for the fraudulent purpose of escaping liability for Arrowside Ventures' debts. Arrowside Ventures was formed to house the investments Cashman made in 2021 to which Plaintiff claims an entitlement of carried interest. *See* Ex. E at 278:18 – 279:3. Perseverus, on the other hand, was formed to house three subsequent investments Cashman made that Plaintiff did not source or have any involvement in. *See*

---

[5] A requirement of a direct predecessor-to-successor transfer is supported by federal successor in interest law. *See United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1233, 1238 (E.D. Cal. 1997) ("Under federal law, successor liability generally does not arise when one corporation purchases the assets of a second corporation unless one of the following exceptions applies: . . . (4) [t]he transaction was fraudulently entered into in order to escape liability.").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                    Case No. 3:22-cv-02010-AMO

Ex. V at 26:2 – 27:5, 29:4 – 11, 49:23 – 50:13, 51:7 – 16, 52:11 – 22. Although Plaintiff alleges that Perseverus was formed to make investments based on "the investment strategy Chang had outlined back in September 2021," there is absolutely no evidence in the record to support this assertion. Complaint, ¶ 19. In reality, the investments made by Perseverus were made through Cashman's own contacts and did not involve Plaintiff in any way, shape, or form. Accordingly, Perseverus has not assumed Arrowside Ventures' liabilities, and this Court does not have personal jurisdiction over Perseverus, rendering all of Plaintiff's claims against Perseverus subject to summary judgment.

### b.   Even if the Court Has Personal Jurisdiction Over Perseverus, Perseverus is Still Entitled to Summary Judgment with Respect to All of Plaintiff's Claims Because it is Not a Successor in Interest to Arrowside Ventures

If the Court's personal jurisdiction over Perseverus is assumed, Perseverus is still entitled to summary judgment with respect to all of Plaintiff's claims. To establish successor-in-interest liability against Perseverus, Plaintiff needs to establish the Court's jurisdiction over Perseverus *and* that she has viable claims against Perseverus. *See e.g. Lefkowtiz v. Scytl USA*, No. 15-CV-05005-JSC, 2016 WL 537952, at *5 fn. 2 (N.D. Cal. Feb. 11, 2016) (acknowledging that a "Rule 12(b)(6) analysis would be very similar to, if not the same as, the successor liability personal jurisdiction analysis . . . ."). As stated in the previous subsection, Plaintiff cannot establish that Perseverus is a successor-in-interest to Arrowside Ventures. Plaintiff has not identified any viable, independent bases upon which she would hold Perseverus liable on any of her Causes of Action. *See* Complaint, ¶¶ 88, 96, 104, 115, 118, 122, 132, 138, 143. Accordingly, since Perseverus is not a successor in interest to Arrowside Ventures, Perseverus is entitled to summary judgment against all of Plaintiff's claims.

### IV.   <u>CONCLUSION</u>

There are no genuine issues of material fact, and Plaintiff cannot establish any of her claims as a matter of law. Accordingly, summary judgment is appropriate.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                    Case No. 3:22-cv-02010-AMO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS,

CARLOS CASHMAN,
ARROWSIDE VENTURES, LLC,
ARROWSIDE CAPITAL, LLC,
ARROWSIDE FUND GP, LLC,
CASHMAN FAMILY INVESTMENTS II, LLC,
and PERSEVERUS, LLC

By their attorneys,

*Gregory Manousos*

Gregory A. Manousos (admitted *pro hac vice*)
Jeffrey T. Collins (admitted *pro hac vice*)
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA 02109
P: (617) 523-6666
F: (617) 367-3125
E: gmanousos@morganbrown.com
jcollins@morganbrown.com

Dated: August 13, 2024

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                    Case No. 3:22-cv-02010-AMO

1

**CERTIFICATE OF SERVICE**

2

3

I hereby certify that on August 13, 2024, a copy of the foregoing document, filed through the ECF system, will be served on all parties as provided by the Notice of Electronic Filing (NEF).

4

*/s/ Jeffrey T. Collins*

5

Jeffrey T. Collins

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
PARTIAL SUMMARY JUDGMENT                    Case No. 3:22-cv-02010-AMO