GLENN AGRE BERGMAN & FUENTES LLP
Lyn R. Agre (SBN 178218)
Edward E. Shapiro (SBN 326182)
L. Reid Skibell (admitted *pro hac vice*)
Ashley Zitrin (SBN 262238)
580 California St., Suite 1420
San Francisco, CA 94104
Telephone: (415) 599-0880
lagre@glennagre.com
eshapiro@glennagre.com
rskibell@glennagre.com
azitrin@glennagre.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### SAN FRANCISCO DIVISION

| | |
|---|---|
| STACY CHANG, | Case Number: 3:22-cv-02010-AMO (DMR) |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| CARLOS CASHMAN, ARROWSIDE CAPITAL, LLC, ARROWSIDE FUND GP, LLC, ARROWSIDE VENTURES, LLC, CASHMAN FAMILY INVESTMENT II LLC, and PERSEVERUS LLC | **Request for Oral Argument** Judge: Hon. Araceli Martínez-Olguín San Francisco Courthouse, 19th Floor, Courtroom 10 Hearing Date: Thursday. November 7, 2024 Time: 2:00 p.m. Action filed: March 29, 2022 Trial Date: March 31, 2025 |
| Defendants. | |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, Plaintiff Stacy Chang, by her

undersigned attorneys, hereby submits the instant Opposition to Defendants' Motion for Summary

Judgment and Partial Summary Judgment, to be heard on November, 7, 2024 at 2:00pm in the San

1   Francisco Courthouse of the Northern District of California, Courtroom 10, by the Honorable

2   Araceli Martínez-Olguín, or as soon thereafter as counsel may be heard.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................................... iii

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT .........................................................................................- 1 -

STATEMENT OF RELEVANT FACTS ...........................................................................- 3 -

    I.    Plaintiff's Position at Founders Fund ........................................................ - 3 -

    II.   Cashman and Copeman Promise Plaintiff a Partnership Position ............... - 4 -

    III.  Plaintiff Begins Working for Cashman to Found Arrowside ...................... - 5 -

    IV.  Defendants Publicly Announce Plaintiff is Part of Arrowside ................... - 6 -

    V.   Plaintiff Leaves Founders Fund Based on Defendants' Promise  of a
        Partnership Position ................................................................................ - 7 -

    VI.  Defendants Oust Plaintiff From Arrowside .............................................. - 9 -

    VII. In the Aftermath, Defendant Cashman Raised Three Funds without Plaintiff.......... - 10 -

LEGAL STANDARD ........................................................................................................- 11 -

ARGUMENT ......................................................................................................................- 12 -

    I.    Significant Evidence of an Enforceable Promise Exists............................ - 12 -

    II.   Significant Evidence of Fraud Exists ...................................................... - 16 -

        A.   Plaintiff Reasonably Relied on Defendants' Misrepresentations
            and Omissions ................................................................................ - 16 -

        B.   Defendants' Specific Intent Argument Fails .................................... - 18 -

    III.  Defendants' Statutory Arguments Fail .................................................... - 19 -

    IV.  Defendants' Unjust Enrichment Arguments Fail ..................................... - 23 -

    V.   Plaintiff's Damages Are Significant ....................................................... - 24 -

CONCLUSION....................................................................................................................- 25 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Slice of Pie Prods., LLC v. Wayans Bros. Ent.*,
  392 F. Supp. 2d 297 (D. Conn. 2005).................................................................................16

*Allen v. King*,
  2016 WL 4381288 (E.D. Cal. Aug. 16, 2016), *aff''d*, 741 F. App'x 463 (9th Cir. 2018) ...........14

*Amaral v. Cintas Corp. No. 2*,
  163 Cal. App. 4th 1157 (Cal. Ct. App. 2008)...................................................................22

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020)..............................................................................17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...........................................................................................................12

*Asnaashari v. PNY Techs., Inc.*,
  2013 WL 2403605 (N.D. Cal. May 31, 2013)....................................................................23

*Bain v. Tax Reducers, Inc.*,
  161 Cal. Rptr. 3d 535 (Cal. Ct. App. 2013).......................................................................22

*Balint v. Carson City*,
  180 F.3d 1047 (9th Cir. 1999) ...........................................................................................12

*Becerra v. McClatchy Co.*,
  284 Cal. Rptr. 3d 784 (Cal. Ct. App. 2021) ......................................................................20

*Cai v. CMB Exp. LLC*,
  2024 WL 2334509 (C.D. Cal. Apr. 4, 2024) .....................................................................24

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...........................................................................................................12

*Chan v. ArcSoft, Inc.*,
  2023 WL 8260886 (N.D. Cal. Nov. 29, 2023) ...................................................................18

*Conservatorship of Whitley*,
  50 Cal. 4th 1206, 241 P.3d 840 (2010)..............................................................................21

*Cuc Dang v. Sutt's Place, Inc.*,
  2012 WL 2977223 (N.D. Cal. July 19, 2012) ....................................................................22

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

*Danko v. O'Reilly*,
  2012 WL 3279431 (Cal. Super. Ct. Apr. 12, 2012) ............................................................ 22

*Dynamex Operations W. v. Superior Ct.*,
  416 P.3d 1 (2018) ............................................................................................................ 20

*First Nationwide Savings v. Perry*,
  11 Cal.App.4th 1657 (Cal. Ct. App. 1992) ...................................................................... 24

*Foley v. Interactive Data Corp.*,
  765 P.2d 373 (Cal. 1988) ................................................................................................ 14

*Grigsby v. Universal Foods Corp.*,
  999 F.2d 543 (9th Cir. 1993) .......................................................................................... 14

*Gunther-Wahl Prods., Inc. v. Mattel, Inc.*,
  128 Cal. Rptr. 2d 50 (Cal. Ct. App. 2002) ...................................................................... 16

*Holandez v. Ent., LLC*,
  2023 WL 8353757 (C.D. Cal. Oct. 27, 2023) .................................................................. 20

*Kruse v. Bank of Am.*,
  202 Cal. App. 3d 38, 248 Cal. Rptr. 217 (Ct. App. 1988) ................................................ 18

*Lampos v. Guitar Ctr., Inc.*,
  2006 WL 4941833 (C.D. Cal. June 7, 2006) .................................................................... 14

*Laub v. Horbaczewski*,
  2018 WL 5903915 (C.D. Cal. July 5, 2018) ............................................................... 12, 13

*Luck v. S. Pac. Transportation Co.*,
  218 Cal. App. 3d 1, (Ct. App. 1990) ................................................................................ 21

*Melbye v. Accelerated Payment Techs., Inc*,
  2012 WL 90477 (S.D. Cal., Jan. 11, 2012) ...................................................................... 15

*Miller v. Unified Sci., LLC*,
  2020 WL 6161634 (S.D. Cal. Oct. 20, 2020) .................................................................... 23

*Moncada v. W. Coast Quartz Corp.*,
  164 Cal. Rptr. 3d 601 (Cal. Ct. App. 2013) ...................................................................... 13

*Myasnyankin v. Nationwide Mutual Ins. Co.*,
  317 Cal. Rptr. 3d 744 (Cal. Ct. App. 2024) ...................................................................... 21

*Nelson v. City of Davis*,
  571 F.3d 924 (9th Cir. 2009) ............................................................................................ 12

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

*Nguyen v. Wells Fargo Bank*,
   2016 WL 5390245 (N.D. Cal. Sept. 26, 2016) ................................................................ 22

*On-Line Power, Inc. v. Mazur*,
   149 Cal. App. 4th 1079, 57 Cal. Rptr. 3d 698 (2007) .................................................... 22

*Perez v. Van Groningen & Sons, Inc.*,
   719 P.2d 676 (Cal. 1986) ................................................................................................ 15

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
   214 F.Supp.3d 808 (N.D. Cal. 2016) .............................................................................. 13

*Rachford v. Air Line Pilots Ass'n Int'l*,
   375 F. Supp. 2d 908 (N.D. Cal. 2005) ........................................................................... 13

*Retired Employees Ass'n of Orange Cty., Inc. v. County of Orange*,
   52 Cal. 4th 1171 (2011) ................................................................................................. 13

*San Joaquin Gen. Hosp. v. Health Care Serv. Corp.*,
   2021 WL 4033214 (E.D. Cal. Sept. 3, 2021) ................................................................ 13

*Shepherd v. Kohl's Dep't Stores, Inc.*,
   2016 WL 4126705 (E.D. Cal. Aug. 2, 2016) ................................................................. 14

*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.*,
   249 Cal. Rptr. 3d 309 (Cal. Ct. App. 2019) .................................................................. 21

*Toranji v. Kim*,
   2015 WL 13740432 (Cal. Super. Ct. Mar. 11, 2015) .................................................... 13

*United States v. Assoc. of Behavior Consultants*,
   2019 WL 12517049 (N.D. Cal. May 9, 2019) ............................................................... 12

*Veasman v. Nuance Commc'ns, Inc.*,
   2022 WL 2964411 (C.D. Cal. June 29, 2022) ............................................................... 20

*Willson v. Bank of Am., N.A.*,
   2004 WL 1811148 (N.D. Cal. Aug. 12, 2004) ............................................................... 18

**Statutes**

Cal. Code Civ. Proc., § 1021.5 ............................................................................................ 21

Cal. Lab. Code, § 2775 ........................................................................................................ 20

Cal. Labor Code § 203 ......................................................................................................... 22

California Business and Professions Code § 17200 ............................................................ 21

vi

California Labor Code Section 210 ................................................................ 22, 23

California Labor Code § 970 ............................................................................ 23

**Regulations**

Cal. Code Regs. tit. 8, §11040(2)(H) ............................................................... 20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1    Plaintiff respectfully requests that Defendants' Motion for Summary Judgment and Partial

2    Summary Judgment ("Defendants' MSJ" or "Defs. MSJ"), which is made on behalf of Defendants

3    Carlos Cashman ("Cashman"), Arrowside Capital, LLC ("Capital"), Arrowside Fund GP, LLC

4    ("Fund GP"), Arrowside Ventures, LLC ("Ventures"), Cashman Family Investment II ("Family

5    Investment"), and Perseverus, LLC ("Perseverus"), be denied for the reasons below.[1]

6                                    **PRELIMINARY STATEMENT**

7    While the evidentiary record in this case fully supports the claims brought by Plaintiff Stacy

8    Chang, that is not the issue before the Court. A motion for summary judgment should be based on

9    *undisputed* facts. Rather than engage with the evidentiary record, however, Defendants have

10   concocted a false narrative that paints Plaintiff as being naive, relies on self-serving testimony and

11   mischaracterized evidence, and proceeds to raise scattershot arguments predicated on that self-serving

12   testimony and mischaracterized evidence—conveniently disregarding any contrary evidence. In so

13   doing, they fail to meet their burden on a motion for summary judgment.

14   The clearest example of Defendants' apparent strategy is that they fail to even mention, much

15   less address, Cashman's December 16, 2021 email (the "December 16 Email") to Tom Copeman

16   ("Copeman"), Cashman's friend who was working for him and was supposed to be a partner,

17   alongside Plaintiff, in the venture capital ("VC") fund Cashman was forming (Ventures), which

18   Cashman sent a few days after Defendants informed Plaintiff that she would not be part of

19   Arrowside's family of funds. In the December 16 Email, Cashman acknowledges that (1) Plaintiff

20   fully believed she was going to be a partner in Arrowside; (2) her belief was based on representations

21   that Copeman had made to Plaintiff that, in Cashman's view, were inaccurate, (3) Plaintiff had been

22   doing the work that Cashman and Copeman felt was beneath them based on Copeman's

23   representations; (4) she would not have left her Chief of Staff position at Founders Fund, one of the

---

[1] To narrow the issues in dispute, and based on the discovery that was conducted related to
Perseverus after the Court's denial of the motion to dismiss related to Perseverus, Plaintiff has
decided not to pursue its claims against Perseverus. For that reason, Plaintiff will not address
Defendants' arguments related to those claims.

28   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
     AND PARTIAL SUMMARY JUDGEMENT
     Case Number: 3:22-cv-02010-AMO (DMR)

most-respected and profitable VC funds in existence, without another job, which Plaintiff believed they were offering her; and (5) what drove the decision to oust Plaintiff from Arrowside was Copeman's desire to take her salary and carried interest for himself. Cashman closed the December 16 Email by succinctly *conceding* the thesis of Plaintiff's case: "***I feel like we made a commitment to Stacy, she banked on that, and we should stand by it.***"

The December 16 Email is the rare example of a document produced in discovery that, in itself, proves there is no colorable basis for summary judgment. Here, it is just one of many documents that corroborates Plaintiff's testimony and version of events.

With respect to Defendants' arguments, their legal infirmities are addressed below. Beyond ignoring evidence that is unfavorable for them, Defendants rely on three asserted facts, none of which supports a grant of summary judgment.

*First*, they claim Cashman had not agreed to serve as the anchor investor for Ventures or approved the budget for Ventures, including Plaintiff's salary, prior to Plaintiff giving notice at Founders Fund. Even if factually accurate, it misses the point. Plaintiff's breach of contract, promissory estoppel, and fraud claims are based on what Defendants *promised or represented* to Plaintiff, not what was concealed from her. For example, a text message that Plaintiff sent on November 2, 2021 is contemporaneous evidence demonstrating Copeman told Plaintiff that Cashman had approved her salary. Defendants' contention that Cashman never approved her salary merely shows that Defendants misled Plaintiff.

*Second*, Defendants repeatedly point to a text message that Plaintiff sent Cashman immediately after Copeman informed her that she was being ousted, which they claim shows that Plaintiff did not rely on their misrepresentations or omissions. However, what Plaintiff wrote in the text is that she understood the risk that Defendants could change their minds about starting a VC fund, as opposed to having Ventures be a family office. This message was in response to the excuse Copeman had given Plaintiff and was part of her pitch to stay on at Arrowside as part of the family office. What Plaintiff plainly did not assume the risk of—because it was kept from her—was that

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1    Cashman never agreed to be an anchor investor or approved a budget or her salary. Plaintiff would

2    never have resigned from Founders Fund if she had known the truth about Defendants' lack of a

3    genuine commitment to founding a VC fund.

4         *Third*, Defendants claim, based on Copeman's self-serving testimony, that Plaintiff told them

5    she was not leaving "anything on the table" when she resigned at Founders Fund. Not only is

6    Copeman's testimony disputed, but it makes no sense. By resigning at Founders Fund, she was

7    leaving a preeminent VC Fund and forfeiting her rights to valuable carried interest, as detailed in the

8    expert report of her damages expert.

9         In sum, Defendants' arguments are grounded in a selective, largely fictionalized version of

10   events. When the full scope of evidence is considered and understood, it is evident that granting

11   summary judgment would be inappropriate here.

12                          **STATEMENT OF RELEVANT FACTS**

13   **I.       Plaintiff's Position at Founders Fund**

14        Plaintiff Stacy Chang is an accomplished entrepreneur and investor, whose career was on an

15   upward trajectory prior to the events at issue. After joining Elie Tahari as a fashion designer, Plaintiff

16   struck out on her own to form an eponymous fashion brand without any outside capital. Declaration

17   of Stacy Chang ("Chang Decl.") ¶ 2. Her brand expanded and was profitable; however, she saw the

18   innovation unfolding in the e-commerce tech space and moved back to where she grew up, the Bay

19   Area, to pursue career growth there. *Id.*

20        Subsequently, she secured a position at Founders Fund, a VC fund with approximately $10

21   billion in assets under management. *Id.* ¶ 4. After just one year of employment, Plaintiff was promoted

22   to Chief of Staff. *Id.* As one of only three Chiefs of Staff, Plaintiff led and sourced investments,

23   researched potential investment industries, maintained relationships with potential investors, and was

24   asked to opine on investment targets as a subject matter expert in consumer-facing industries. *Id.* She

25   also learned from the best how a fund is run and organized. *Id.* She brought to bear all of this

26   experience when she joined Arrowside.

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

Plaintiff was well-compensated at Founders for her work, receiving approximately $150,000 in salary, plus a highly lucrative carry allocation of .1% of the carry from profits on the three funds that opened during her tenure. *Id.* ¶ 5. Plaintiff also had the opportunity to invest individually in those funds, and in special purpose vehicles for unique startups, such as SpaceX. *Id.* Although Plaintiff was highly regarded at Founders she ultimately wanted to be a partner at a VC firm and such a position was not available at the firm. She would not have left Founders for anything less. *Id.* ¶ 6.

## II.     Cashman and Copeman Promise Plaintiff a Partnership Position

Defendants began pitching Plaintiff on joining Arrowside back in May 2021, as Copeman reported in a text to Cashman:

> Had a fantastic call with Stacy yesterday at Founders Fund. She's definitely interested in talking about joining us. She's so damn smart and humble, really connected with some good experience and she's cool. She's also a lifelong learner like us.

(Declaration of Ashley Zitrin ("Zitrin Decl.") Ex. H. [2] To which Cashman responded: "Yay! Sweet. Getting the band together!" *Id.; see also id.* (Cashman text: "we got a crew forming. 😊" and Copeman text: "[Plaintiff's] awesome").

In June 2021, Cashman and Copeman proposed that Plaintiff join them in raising a new fund, and they discussed how that fund would be positioned. Ex. H, D (Chang Tr. 59:21 to 61:11). They continued to pursue her that summer, and requested she meet with them in Boston, MA and expand upon the investment thesis and overall strategy for a new fund that was first presented by Plaintiff in June over Zoom. Ex. I. At that meeting, which took place in September (the "September Meeting"), Plaintiff presented a unique investment thesis for an early stage venture capital ("VC") fund, which Cashman touted as "insightful and awesome." Exs. J, K. Cashman then orally offered, and, in turn, Plaintiff accepted, a partnership role in their forthcoming VC fund, which would be formed under the

---

[2] Unless otherwise noted, all documents and testimony referred to herein are appended as exhibits to the concurrently filed Zitrin Declaration with the referenced text highlighted per the Court's standing order and are designated as such in the format "Ex. _." Citations to deposition testimony are designated in the format as "Ex. _ ([Deponent] Tr.). Emphasis has been added unless otherwise noted.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1    umbrella "Arrowside Capital" investment platform and called "Ventures," along with a fund focused

2    on different assets helmed by Tucker Walsh, another investment professional Cashman was bringing

3    on, to be called "Fund." Chang Decl ¶ 8; Ex. A (Cashman Tr. 31:03-07, 32:13-33:03); Ex. L. Cashman

4    promised to provide anchor funding for both, noting that he was expecting a large payout from selling

5    his shares of Thrasio, his billion dollar startup. Ex. A (Cashman Tr. 277:19-24), M, D (Chang Tr. at

6    129:05-130:07). That payout came to fruition in October 2021. Ex. D (Chang Tr. at 129:01-21).

### III.    Plaintiff Begins Working for Cashman to Found Arrowside

8        Following the September 21 Meeting, Cashman and Copeman began treating Chang as a

9    partner in the founding of Arrowside. A few examples are illustrative. Cashman started directing

10   Plaintiff to investigate potential deals for Ventures and to report back to him with formal assessments.

11   These requests continued up until December 6, days before Chang was informed she would not be

12   part of Arrowside. Ex. Q. (sample collection of requests). To keep Cashman informed on her progress,

13   Plaintiff proceeded to send him weekly emails on all deal investigations. Ex. N.

14       Likewise, Cashman asked Plaintiff to source and set up deal tracking software and other

15   related applications, which Plaintiff proceeded to do at her own expense and for Arrowside's benefit.

16   Exs. R, A (Cashman Tr. 215:20 to 216:25, 247:17 to 248:19, 257:20 to 258:13) (Cashman directed

17   Plaintiff to set up the deal tracking software). Cashman also required Plaintiff to advise him and

18   Copeman on possible fund structures, budget, and carry allocations; to travel to meet with potential

19   limited partner ("LP") investors; and to work with Foley & Lardner LLP to legally formalize the fund

20   and required employment paperwork. Ex. M. Plaintiff and Copeman had three standing phone

21   meetings a week to discuss these items, lasting between one and two hours each, with multiple calls

22   in between. Exs. E (Copeman Tr. at 111:22-25 to 112:1-10), O. Cashman attended these meetings

23   weekly or every other week. Ex. P.

24       Additionally, Plaintiff independently sourced, negotiated and closed investments in Nishe,

25   Remi, Veriscolor Technologies, and Progression Fund II. Ex. S. Plaintiff also performed due diligence

26   upon and negotiated investments in Perch, Retalio, Babylist, and X By, the last of which Ventures

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1    committed to closing but did not complete. Ex. Y. Additionally, Plaintiff evaluated and passed on

2    numerous other investments, including ALL3D, Canal, Open Market, Honest Stand, Mayvenn,

3    Unbridaled, Selldash, June Homes, Onside, Glo Pals, and COR. Chang Decl. ¶ 12

4        In total, Plaintiff spent more than 400 hours working for Defendants, most of which was spent

5    while she was also working full-time for Founders Fund. *Id.* Defendants were fully aware of the

6    volume of work that Plaintiff was undertaking on their behalf. Ex. T (Cashman telling Copeman

7    "you're like me, you're high level and don't want to do the details" and Plaintiff was "*cranking away*"

8    "doing a lot of work – *on my behalf essentially.*"); Ex. U (Cashman investing on his own would

9    "defeat[] the purpose in *hiring all you guys!*"). And they were deeply impressed with her work. Ex.

10    V ("Wow, this is EXACTLY why you guys are going to win out there! And exactly why I need you

11    on my side*. Great write up and thoughts Stacy.* Thank you!").

12    **IV.    Defendants Publicly Announce Plaintiff is Part of Arrowside**

13        In the period after the September 21 Meeting, Defendants reconfirmed the promise they had

14    made at the September 21 Meeting through their conduct. To begin with, Cashman secured Arrowside

15    domains and email addresses for all members of the nascent firm, namely Plaintiff, Copeman, Walsh,

16    and himself. Cashman specifically instructed Plaintiff to use her Arrowside email address going

17    forward and to introduce herself to start-up founders by stating: "Hi, *we're from Arrowside, Carlos's*

18    *team.*" Ex. W; Ex. A (Cashman Tr. 280:19 to 282:9).

19        Cashman and Copeman also signaled that Plaintiff was part of Arrowside by holding her out

20    to potential investors, investment companies, and others as a vital member of the firm. The examples

21    below are a representative sample:

22    • Cashman introduced Plaintiff and Copeman to a potential investment: "*Please meet Stacy*
23        *and Tom, they run my investing brain. ;)*" Ex. X;

24    • Cashman responded to an email asking, "is Tucker, Tom and Stacy your family office
25        team?" by stating "Yep. Tucker is the overall CEO/CIO. *Tom and Stacy run the ventures*
26        *group.*" Ex. Z;

27

28
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

- Cashman responded to a potential investment, "Introducing you to *my team* for them to set up a time to get up to speed," copying Plaintiff. Ex. AA;

- Cashman responded to a potential investment "Cool. I like the progress. Love to see a deck and learn more. Will connect with *my team*," copying Plaintiff. Ex. BB;

- Copeman told a potential investment that "*Stacy from our group* is actually going to lead this deal for us. She's copied herein and will coordinate a call with you." Ex. CC;

- Cashman introduced Plaintiff and Copeman to a potential investment company, "Please meet *Tom and Stacy, they rock*!" Ex. DD;

- Cashman responded to a potential investment, "Not sure if we lost track of this or you connected with *my team*. They are copied here" copying Plaintiff. Ex. EE; and

- Cashman told a potential investment "copying *my team*. *Tom and Stacy*, here to take a look…You all rock." Exs. FF, A (Cashman Tr. 287:12 to 288:21).

**V.    Plaintiff Leaves Founders Fund Based on Defendants' Promise of a Partnership Position**

October and November 2021 were busy months for the team. In the middle of November, Cashman confirmed the size of his anchor investment in Ventures and how much he was willing to contribute towards a budget for Ventures. Ex. K (text from Cashman to Copeman "You have a certain budget from me, and anything else you raise….right now say [investment] was 10mm."). Subsequently, Copeman sent Cashman a budget for the operation of Ventures that allocated annual salaries of $225,000 to partners Plaintiff and Copeman, and budgeted for business meals, computers and supplies, travel, software, accounting, legal expenses, and payroll for assistance from another professional, and an executive assistant. Ex. GG.

In the beginning of November, Copeman informed Chang that Cashman had approved the budget for Ventures and an annual salary of $225,000 for her. Ex. D (Chang Tr. 128:8-12; 140:13 to 141:25.) Although Defendants claim that the budget was never approved (Defs' MSJ at 6:05-09), contemporaneous documents show that Copeman told Chang otherwise. Chang texted an

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1   acquaintance who was also considering Arrowside: "*Carlos approved my salary* - official start date

2   not fully confirmed but I told Tom I would like it to be retroactive to 12/1 even if I don't get paid

3   until January because of amount of work I've been doing and increased full time in Dec." Ex. HH.

4         Moreover, Plaintiff, Copeman and Cashman attended a Zoom meeting in mid-November

5   during which Cashman approved a 25% fund-level carried interest for Plaintiff. Ex. D (Chang Tr.

6   154:08 to 156:17).

7         At this time, Plaintiff's role was beginning to involve fundraising from LPs. Ex. II. Given her

8   increasing workload for Ventures and to avoid any conflict with Founders, Plaintiff told Cashman

9   and Copeman that she would be putting in her notice at Founders. (Chang Decl. ¶ 11). They were

10  thrilled, as was Copeman when she reminded him on the day she gave her notice, November 11. Ex.

11  JJ. She did not at that time, or ever, tell Cashman and Copeman that she was leaving "nothing on the

12  table" in departing Founders Fund. In fact, this was a critical decision for Plaintiff given the generous

13  salary, benefits, and carry on future Founders' funds she would be giving up, and since she was not

14  fully vested in the three funds she did have carry in, and would be forgoing her annual bonus, missing

15  that payout by just one month. Exs. F (Gross Tr. at 29:12-14), KK.

16        Plaintiff only decided to provide notice to Founders Fund because she had been promised a

17  partnership role in the VC fund that Defendants were forming. Chang Decl. ¶ 6. When Plaintiff gave

18  her notice on November 11, 2021, she excitedly told her superior, Chief Operating Officer Lauren

19  Gross-Bernstein, that she had secured a partnership position at a new VC fund. Ex. F (Gross Tr. at

20  28:18-29:11). Plaintiff would not have left Founders for anything less. *Id.* at 24:15 to 25:04.

21        In fact, Cashman acknowledged that Plaintiff would not have left Founders Fund without a

22  commitment on a new position. When asked if Plaintiff would have left Founders Fund for a mere

23  "vision," he responded "No. . . *That would be crazy*." Ex. A (Cashman Tr. 196:15-24); *see also* Ex.

24  T ("she would not have left without finding something else … Not just walk out without something.").

25        In early December, Copeman and Cashman tasked Plaintiff with working with outside

26  counsel, Foley & Lardner, to finalize the fund documentation and employment agreements. Ex. M

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1   (Cashman email to Copeman on December 6, 2021: "Tom -We need to get the fund formed. Maybe

2   you need to get Stacy on that?" to which Copeman responds: "yes, it's time now -- Stacy and I had a

3   good prelim call with Foley a few weeks back and she will take the lead now on fund formation with

4   legal, along with 1099 employment agreements and payroll, etc."). Plaintiff emailed their contact at

5   Foley stating "[w]e now have fund structure, carry structure and partner carry split all determined,"

6   on December 6, 2021, and created a chart of the fund platform and carry splits. Exs. LL,MM.

7       **VI.    Defendants Oust Plaintiff From Arrowside**

8           Unbeknownst to Plaintiff, her position at Arrowside was not as secure as Defendants had

9   represented. While the full scope of what took place behind the scenes may never be known, the

10  evidence suggests there was tension between Cashman and Copeman about compensation and other

11  matters. Ex. NN (Copeman text to Cashman: "Been working on ArrowSide since August 12th . . . and

12  I've done it for $0 and no document between us"). The dynamics between them apparently triggered

13  the decision to cut Plaintiff out after she had committed to Defendants, as was revealed by Cashman

14  in the December 16 Email:

15          ***I just have gotten the sense that you're really worried about your personal cash
           situation. It's come up in almost all of our interactions in some way or another***
16          ***the past six months - and it's uncomfortable. I could be wrong. But I feel like that***
           ***drove this decision as much as anything - your desire not to share carry, not to***
17          ***share expenses and then possibly take more***. If there's something going on here –
           let's discuss that. But it's separate from an investment entity that helps me get early
18          stage stuff done that I don't have time to look at and do, and does represent good
           opportunity. ***And I feel like we made a commitment to Stacy, she banked on that,***
19          ***and we should stand by it***. So please figure something out here.
20
21  Ex. T.

22          In the December 16 Email, Cashman also acknowledged that they had not been forthcoming

23  with Plaintiff despite the tremendous amount of work they had her doing:

24          ***The interaction with [Plaintiff] I think has been a mess. I don't think she was as***
           ***clear on this being not set in stone, I don't think you communicated that very***
25          ***clearly to her***. You had her doing a lot of work - on my behalf essentially. I get
           it from a doing the work perspective - you're like me, you're high level and
26          don't want to do the details - and I understood that's why you brought her on and
           she was good at it, is good at it. ***But she was cranking away and assuming this***

27                                                    - 9 -

28

***was her next thing - and . . . she went outside and represented that to other people
based on essentially what she was hearing from you that this was happening****. . . .*

**So while she can say she was leaving Founder's anyway, she would have not
left without finding something else . . . . Not just walk out without something.
There's a big difference, and *when we tell her we're that thing and then we're
not – that's a shitty thing to do to someone. Especially at an early stage of their
career.*** She wants to add value. She wants to work. She doesn't care if it's a
traditional fund or not.

*Id.* ; *see also* Ex. OO (text from Cashman to Copeman: "I think ya mismanaged this a bit my friend").

On December 10—less than two weeks after Plaintiff's last day at Founders Fund—Copeman

informed Plaintiff that she would not be part of Arrowside due to Cashman's purported lack of interest

in a "traditional fund" and that the budget could "only afford [Copeman]," who would be running

Ventures on his own. Ex. PP. Nevertheless, Defendants still recognized their obligation to compensate

Plaintiff for helping to found Arrowside. *Id.* (Copeman stating they would pay her salary and carry).

In an attempt to save her job, Plaintiff suggested to Cashman that they go back to the family

office model, rather than raising outside capital. Ex. QQ. Plaintiff acknowledged there was a risk to

relying on outside capital (*see id.*), but that risk was significantly mitigated by Cashman's promised

$10 million in anchor funding. Ex. D (Chang Tr. at 162:02-24). That was the calculated and mitigated

risk she took when she left Founders, not that she would be an unwitting victim of Copeman's cash

grab or Cashman's lackadaisical approach towards the truth. Cashman seemed to agree with Plaintiff:

"There still can be [a fund]. I've been impressed with what you've done. I just don't see it in the

format of a regular fund right now and raising for that." Ex. QQ.

Despite Cashman's initial support for compensating Plaintiff and keeping her at the fund,

Defendants never put forward a firm offer. Frustrated with this situation, Plaintiff referred all future

discussions to legal counsel at the end of December 2021. Ex. D (Chang Tr. 235:14 to 236:04).

## VII.   In the Aftermath, Defendant Cashman Raised Three Funds without Plaintiff

Ventures was formed mere days after Plaintiff was excluded, on December 16, 2021. Ex. RR.

Ventures' operating agreement lists sixteen investments totaling over $3.5 million, half of which

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1   Plaintiff sourced, and all of which her work supported. Exs. SS, E (Copeman Tr. at 285:06-15). It

2   also lists Copeman as the investment manager, granting him $90,000 in backpay for his work on those

3   same investments from July 1, 2021 through March 2022. Ex. TT.

4       Cashman signed the Operating Agreement for Arrowside Capital soon after, on January 12,

5   2022. Ex. UU. The agreement listed Walsh as a 51% interest member and Cashman as a 49% interest

6   manager. Ex. VV. On March 2, 2022, Cashman provided $22 million in anchor funding to Capital,

7   via its investment vehicle, Fund LP, through his family office, Cashman Family Investments. Ex.

8   WW. Moreover, Capital is actively fundraising from outside LPs, proving that the excuse that

9   Copeman delivered to Plaintiff, that he did not have an "appetite" for fundraising, was false. Ex. II.

10      Next, Cashman launched Perseverus, helmed by Copeman to make VC investments based on

11  the strategy outlined by Plaintiff at the September 2021 Meeting, because "we needed an entity to do

12  the investing that we were going to continue doing together, that we'd been doing before." Ex. B

13  (Cashman Tr. at 25:02-17), Ex. E (Copeman Tr. 94:03-96:24; 265:23-266:17) (describing Plaintiff's

14  strategy and a similar investment strategy for Perseverus). None of these funds were inhibited by the

15  excuses that Copeman gave Plaintiff when announcing her ouster, and all of them still exist today.

16  Cashman and Copeman's relationship, however, did not fare as well and Copeman's last day as

17  investment manager of Perseverus and Ventures was on December 10, 2022. Ex. DDD. Copeman's

18  severance agreement states no carry will be distributed until the instant action is resolved and 1.5x

19  legal costs and expenses paid back to Cashman's family office, Family Investment II. Ex. EEE. Thus,

20  Cashman tied his financial interests to the outcome of this litigation.

21                          **LEGAL STANDARD**

22      As the moving party, Defendants must "identify[] those portions of the pleadings and

23  discovery responses that demonstrate the absence of a genuine issue of material fact." *United States*

24  *v. Assoc. of Behavior Consultants*, 2019 WL 12517049, at *3 (N.D. Cal. May 9, 2019) (citing *Celotex*

25  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A dispute as to a material fact is genuine if there is

26  sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* (citing

27

28      PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
        AND PARTIAL SUMMARY JUDGEMENT
        Case Number: 3:22-cv-02010-AMO (DMR)

1    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is not the Court's role to "weigh the

2    evidence or determine the truth of the matter, but only determine whether there is a genuine issue for

3    trial." *Id.* (citing *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999)).

4        As is evident from a comparison of the parties' respective factual recitations, virtually every

5    key fact is disputed. Although Defendants' set of facts is largely based on self-serving testimony that

6    is contradicted by the contemporaneous written evidence, that is beside the point at this stage of the

7    case. It is for the jury to resolve those factual disputes, which is why summary judgment should be

8    denied. *See Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009) ("A judge must not grant

9    summary judgment based on his determination that one set of facts is more believable than another.").

10                                **ARGUMENT**

11    **I.    Significant Evidence of an Enforceable Promise Exists**

12        The parties do not dispute the elements of Plaintiff's breach of contract and promissory

13    estoppel. According to Defendants, there was no enforceable promise that would support those claims

14    because Cashman and Copeman did not promise to make Plaintiff a partner in the VC fund they were

15    forming. That argument is unavailing because it is based on a creative gloss on citations to the

16    evidentiary record, as well as the omission of large swaths of contrary documents and testimony.

17        A contract for employment can be written, oral, implied, or a hybrid of the three. *See Laub v.*

18    *Horbaczewski*, 2018 WL 5903915, at *4 (C.D. Cal. July 5, 2018). The primary difference between

19    the various agreements is how assent is reached: "The terms of an express contract are stated in

20    words. The existence and terms of an implied contract are manifested by conduct. The distinction

21    reflects no difference in legal effect but merely in the mode of manifesting assent." *Id.* (quoting

22    *Retired Employees Ass'n of Orange Cty., Inc. v. County of Orange*, 52 Cal. 4th 1171, 1178 (2011)).

23        Like a written contract, an oral or implied contract is enforceable provided the terms are

24    "sufficiently certain so as to provide a basis for determining to what obligations the parties have

25    agreed." *Toranji v. Kim*, 2015 WL 13740432, at *4 (Cal. Super. Ct. Mar. 11, 2015). This is a low

26    bar to clear—all that is required for the formation of an oral or implied contract is that the essential

27

28
                                        - 12 -

terms are agreed upon to a reasonably definite degree.[3] *See Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 214 F.Supp.3d 808, 830 (N.D. Cal. 2016) (explaining the standard); *see also Laub*, 2018 WL 5903915, at *4-5 (oral agreement to the "material terms" of a business plan and one-third interest in an unformed entity reasonably definite to form a partnership); *Moncada v. W. Coast Quartz Corp.*, 164 Cal. Rptr. 3d 601, 610 (Cal. Ct. App. 2013) (promise to pay employees "an amount sufficient to retire upon the sale of" a business was enforceable). Moreover, parties can validly form a contract by agreeing to leave open a term to be subsequently negotiated in good faith, as the authority relied upon by Defendants acknowledges.[4] In fact, "[t]he omission of an essential term in a contract, such as price, does not vitiate contract formation if the parties otherwise manifested their mutual assent to the agreement and the terms of that agreement are sufficiently definite, thus permitting the court to fill in gaps." *San Joaquin Gen. Hosp. v. Health Care Serv. Corp.*, 2021 WL 4033214, at *3 (E.D. Cal. Sept. 3, 2021) (quotation and citation omitted).

In considering the "existence and content" of an implied-in-fact employment agreement, courts look to the "totality of the circumstances" that exist between the putative employer and employee. *Lampos v. Guitar Ctr., Inc.*, 2006 WL 4941833, at *5 (C.D. Cal. June 7, 2006) (citing *Foley v. Interactive Data Corp.,* 765 P.2d 373, 388 (Cal. 1988)). This involves "particularly fact-driven inquiries," *Shepherd v. Kohl's Dep't Stores, Inc.*, 2016 WL 4126705, at *9 (E.D. Cal. Aug. 2, 2016), which is why the existence of an implied contract is normally a jury issue. *See Grigsby v.*

---

[3] California applies the same lenient standard for definiteness to promissory estoppel claims. *See Tetrault v. Cap. Grp. Companies Glob.*. 2014WL 3468903, at *9 (C.D. Cal. Jan. 17, 2024) (denying motion for summary judgment on definiteness grounds).

[4] Defendants' authority concerns a hearing to decide whether a draft settlement agreement was enforceable, and thus it was the equivalent of a bench trial. *Rachford v. Air Line Pilots Ass'n Int'l*, 375 F. Supp. 2d 908, 910 (N.D. Cal. 2005). The court found that no contract had been formed because the parties had failed to agree on a key term or *to decide the matter at a later date. Id.* at 940 ("This is not a case of two parties agreeing to dispense with agreement over the precise content of a particular substantive term."). It does not, as Defendants claim, support the proposition that contract formation requires final agreement on every contractual term.

1   *Universal Foods Corp.* 999 F.2d 543, at *2 (9th Cir. 1993) ("California courts have been exceedingly

2   unwilling to take the question of whether such an agreement exists away from the jury.").

3       Here, the evidentiary record supports the existence of both an oral contract and an implied

4   contract. Plaintiff testified that Defendants orally offered her a partnership position in the VC fund

5   they were forming, which she accepted. Chang. Decl. ¶ 6. Subsequently, she testified that the parties

6   finalized the terms of her salary and agreed that she would receive fund-level carried interest. Ex. D

7   (Chang Tr. 154:08 to 156:17). That testimony is an admissible defense rendering summary judgment

8   inappropriate. *See Allen v. King*, 2016 WL 4381288, at *5 (E.D. Cal. Aug. 16, 2016) ("Direct

9   testimony of the non-movant must be believed"), *aff"d*, 741 F. App'x 463 (9th Cir. 2018).

10      Here, Plaintiff's testimony was also corroborated by a range of documentary evidence,

11  including (1) the November 2 text showing that Plaintiff was told her salary had been approved; (2)

12  the December 6 email from Cashman to Copeman stating it was time to draft the fund documents;

13  and (3) the email from Plaintiff to Foley & Lardner stating that all the financial terms for Arrowside

14  had been finalized.

15      Additionally, documentary evidence shows there was a meeting of the minds on the terms of

16  a contract, including: (4) emails from Cashman and Copeman holding Chang out as a part of

17  Arrowside or working for Cashman, which they would not have done if there were unresolved

18  contingencies; (5) the hundreds of hours Chang spent working on founding Arrowside and sourcing

19  investments, which Chang (or any other reasonable person) would not have done without an

20  agreement on the material terms of a promised partnership role; and, perhaps most importantly, (6)

21  Cashman's admission in the December 16 Email that Defendants had made a "commitment" to

22  Plaintiff that they should honor." Exs. T, A (Cashman Tr: 152:10-21) ("Q: So at this time, you are

23  of the opinion that we, meaning you and Mr. Copeman, had made a commitment to Ms. Chang,

24  right? A: Yes."). Indeed, Cashman's admission itself is sufficient evidence for a jury to find that the

25

26

27

28   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

"totality of the circumstances" supports the existence of a contract.[5] *See, e.g.*, *Melbye v. Accelerated Payment Techs., Inc*, 2012 WL 90477, at *7 (S.D. Cal., Jan. 11, 2012) (denying summary judgment where employer made "repeated oral assurances" giving rise to a "reasonable expectation" by employee).

Against this evidence, Defendants cite excerpts from the deposition testimony of Copeman and Plaintiff, neither of which supports Defendants' argument. Copeman testified that he and Chang had preliminary discussions about forming a fund together in Summer 2021, Ex. E (Copeman Tr. 58:14-20), which is immaterial to the issue of whether Defendants made a definite offer to Chang in November 2021; and that he "[could not] recall" discussing with Chang in November her becoming a partner in Arrowside, *id.* (Copeman Tr. 101:20 to 102:12), a claim which is belied by, among other things, the December 16 Email and the parties' course of conduct.

As for Plaintiff's testimony, Defendants are correct that she testified Cashman told her in September that the only contingency to the creation of Arrowside was that he needed to sell certain Thrasio shares to serve as the anchor investor, which was "not done until it's, like, wired." Ex. D (Chang Tr. 129:1-14). However, Defendants neglected to include the testimony that Cashman told Plaintiff the deal was "*99% there*," as well as the next few lines of testimony: "I believe [Cashman's sale of shares] closed either a week or two . . . later," which is why Plaintiff and Copeman "started ramping up more active investments, formalizing the documents, getting the email address, starting to really, like, sell the brand." *Id.* Accordingly, the only contingency Defendants can identify was satisfied *prior* to Plaintiff departing her position at Founders Fund.[6]

---

[5] Defendants do not dispute that Cashman is responsible for Copeman's actions. Nor could they. Cashman supervised Copeman, and the latter worked both as an investment manager for Ventures, Perseverus, and for Cashman's family office funds. *See, e.g.*, *Perez v. Van Groningen & Sons, Inc.*, 719 P.2d 676, 680 (Cal. 1986).

[6] Although Defendants also claim that Plaintiff's salary and her percentage of carry had not been agreed upon (Defs. MSJ at 11), the evidence discussed above creates a disputed issue of fact as to whether Copeman told Plaintiff there was agreement on those issues.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1    Finally, to the extent Defendants could identify an issue that had not been fully agreed to by

2    Defendants and Plaintiff, that would, at best, create a disputed issue of fact as to whether that issue

3    was essential to the formation of an employment contract.[7] The VC industry is less formal than other

4    business sectors, and promises related to starting a new fund are understood to be binding even where

5    there are terms still to be finalized. Ex. C (Chandra Tr. 99:20 to 100:22). For example, Walsh and

6    Copeman began working for Arrowside without a written employment contract or agreement on

7    treatment of carry. Ex. NN; Ex. G (Walsh Tr. 23:12-24:6) (Walsh and Cashman "came to an

8    understanding").

9    Given the myriad factual disputes left unresolved by the factual record, summary judgment

10   on Plaintiff's breach of contract and promissory estoppel claims is unwarranted.

11   **II.    Significant Evidence of Fraud Exists**

12   **A.  Plaintiff Reasonably Relied on Defendants' Misrepresentations and Omissions**

13   Defendants' fraud arguments are based on a strawman that does not fit Plaintiff's stated

14   theory. Defs. MSJ at 14. Plaintiff does not claim that she relied on a supposed promise that Arrowside

15   Ventures would be a success or that enough LPs would invest to make the fund sustainable. The

16   specific representations that Defendants made to Plaintiff and that she relied upon in deciding to leave

17   Founders Found include that they were offering her the opportunity to be a partner in the VC fund

18   that Defendants were creating, Cashman was going to be the anchor investor, and a year's salary for

19   her role had been allocated. In other words, if she accepted their offer, the fund might succeed or fail

20   (as many startups do) but she would be a part of the team building Arrowside Ventures.

21

22

23   _____

24   [7] Evidence of industry custom and practice is properly understood to create a disputed factual issue.
     *See A Slice of Pie Prods., LLC v. Wayans Bros. Ent.*, 392 F. Supp. 2d 297, 310 (D. Conn. 2005)

25   (applying California law and finding that "evidence of the parties' conduct in the context of
     evidence of industry custom and practice could indicate mutual assent and formation of an implied

26   contract"); *Gunther-Wahl Prods., Inc. v. Mattel, Inc.*, 128 Cal. Rptr. 2d 50, 57 (Cal. Ct. App. 2002)
     ("Evidence as to [plaintiff's] expectations and the custom in the industry gives a factual basis to

27   appellants' claim of implied contract.").

28   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
     AND PARTIAL SUMMARY JUDGEMENT
     Case Number: 3:22-cv-02010-AMO (DMR)

1    Those representations were false because Defendants lacked a firm commitment to starting

2   Ventures, as Defendants seem now to concede (*see id.*, at 2), and Cashman and Copeman were at

3   odds over the budget and compensation, which cast doubt on whether she would have a position. That

4   knowledge makes Defendants' representations demonstrably false, as Cashman recognized at the

5   time. As he put it in the December 16 Email, "I don't think she was as clear on this being not set in

6   stone, I don't think you communicated that very clearly to her . . . . she went outside and represented

7   that to other people based on essentially what she was hearing from you that this was happening." Ex

8   T. At a minimum, Defendants had a duty to disclose their lack of commitment given their prior

9   representations to Plaintiff and superior knowledge. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993,

10   1015 (N.D. Cal. 2020) (superior knowledge and active concealment can create a duty to disclose).

11    Plaintiff's reliance on Defendants' representations and omissions was reasonable and

12   foreseeable, not only because a reasonable person would understand Cashman and Copeman's

13   conduct as recommitments to their promise to employ and pay Plaintiff for her work, but because

14   Cashman and Copeman both knew before Plaintiff gave notice to Founders that she was leaving that

15   lucrative position to raise the Arrowside investment vehicles and fund platform, and both reacted with

16   excitement rather than warning. Cashman recognized that it would have been "crazy" for Plaintiff to

17   leave Founders Fund without another position, Ex. A (Cashman Tr. 196:15-24), and it was plainly

18   reasonable for Plaintiff to believe that Cashman would have informed her if anything had changed

19   that would make Defendants' prior representations inaccurate. To put it another way, Chang

20   reasonably trusted Defendants to be honest and forthcoming with her.

21    Prior to giving notice to Founders Fund, Plaintiff once again told Copeman of her plan,

22   without any objection from him. Chang Decl. ¶ 11 and Ex. HH. Copeman's convenient (and heavily

23   disputed) recollection that Plaintiff told him she "left nothing on the table" at Founders cannot reduce

24   all of the evidence identified to a finding that no disputes of material fact exist here. *See Chan v.

25   ArcSoft, Inc.*, 2023 WL 8260886, at *16 (N.D. Cal. Nov. 29, 2023) (denying summary judgment

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1  because "[t]he jury determines the reasonableness of a plaintiff's reliance as a question of fact [e]xcept

2  in the rare case where the undisputed facts leave no room for a reasonable difference of opinion").

3    The authority relied on by Defendants is readily distinguishable because in that case, which

4  involved the appeal of a jury verdict, the plaintiff had actual knowledge of the allegedly undisclosed

5  facts. *See Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 64, 248 Cal. Rptr. 217, 232 (Ct. App. 1988);

6  *see also Willson v. Bank of Am., N.A.*, 2004 WL 1811148, at *3 (N.D. Cal. Aug. 12, 2004) ("[In

7  *Kruse,*] [t]he court there held that a party cannot reasonably rely on failure to disclose a fact when the

8  party had actual knowledge of that fact."). By contrast, Plaintiff did not know, and could not know,

9  that the specific representations made to her were false. And to the extent that Defendants would

10  dispute Plaintiff's lack of knowledge, that would simply create a factual dispute.

11    As for Defendants' claim that Plaintiff admitted she did not rely on their representations, that

12  argument is based on a misreading of the text message that Defendants repeatedly cite. In the text,

13  Plaintiff is conveying that she understood the inherent "risks/non-commitment" of Cashman and

14  Copeman *changing their minds* about running a traditional VC fund that would raise money from

15  LPs, which was the excuse Copeman had given Plaintiff and she had believed was true at the time.

16  Ex. D (Chang Tr. 203:17-25). What Plaintiff did not know was that Copeman had misrepresented key

17  facts to Plaintiff *before* she had provided notice to Founders Fund, such as, for example, telling

18  Plaintiff that Cashman had approved a budget for Ventures that had a salary for her.

19    **B.  Defendants' Specific Intent Argument Fails**

20    Defendants claim that they lacked an intent to defraud Plaintiff based on testimony from

21  Cashman and Copeman that they originally intended to start a VC fund before changing course based

22  on market conditions. Defs. MSJ at 14. Assuming *arguendo* that the testimony was credible, it would

23  still not assist Defendants. Cashman testified that this decision was made "probably in November . .

24  . I don't know the exact timeframe of when it occurred" Ex. E (Copeman Tr. 187:15 to 188:6). That

25  would, at a minimum, create an issue of fact of whether that purported change of heart came before

26

27

28

- 18 -

1    Plaintiff provided notice to Founders Fund on November 11, 2021, or departed the firm on November

2    30, 2021. Chang Decl. ¶ 11.

3           In any case, their uncorroborated testimony is not credible. As noted, Defendants now argue

4    that Cashman lacked a commitment to creating Ventures from the start, which is at odds with the

5    contention that Defendants only changed their plans in response to changing economic conditions.

6    The December 16 Email is also contemporaneous evidence that Defendants made representations to

7    Plaintiff that they knew were false at the time.

8           Moreover, Arrowside as a fund platform was subsequently created as had been agreed to at

9    the September 21 Meeting, just without Plaintiff as partner. It consists of Ventures, Capital and

10   Perseverus, all of which have made significant investments. Simply because Defendants changed the

11   name of the investment fund from Ventures to Ventures II to Perseverus, does not mean that the VC

12   fund discussed with Plaintiff was not formed. Cashman and Copeman either intended Plaintiff to rely

13   on their false promise of partnership at a new VC fund so that she would help source and support the

14   $3.5 million in investments Ventures made, and provide a strategy for Perseverus going forward,

15   without compensation, or they were reckless or negligent in making such misrepresentations for that

16   purpose. Neither version of events justifies a grant of summary judgment.

17          **III.    Defendants' Statutory Arguments Fail**

18          Defendants raise a hodgepodge of arguments with respect to Plaintiff's statutory law claims.

19   Each involves disputed issues of fact, is wrong on the law, or both.

20          *First*, Defendants assert that Plaintiff was not an employee despite the hundreds of hours she

21   worked for Arrowside and Cashman, the investments she helped make, and the expenses she paid

22   without reimbursement. Not so. For the claims at issue, there is a three-part test, the ABC test, for

23   determining whether a person providing services to a company, like Plaintiff, qualifies as being in an

24   employer-employee relationship.[8] Cal. Lab. Code, § 2775 (stating test); *see also Holandez v. Ent.,*

25   _____

26   [8] The test requires the putative employer to show the following:

27

28   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
     AND PARTIAL SUMMARY JUDGEMENT
     Case Number: 3:22-cv-02010-AMO (DMR)

1    *LLC*, 2023 WL 8353757, at *9 (C.D. Cal. Oct. 27, 2023) ("the ABC test is the correct employer-

2    employee relationship test for most California state law claims."); *Becerra v. McClatchy Co.* (2021)

3    284 Cal. Rptr. 3d 784, 799 (Cal. Ct. App. 2021) ("the ABC test remains the operative test for

4    determining whether a worker is an employee for purposes of the Labor Code, the Unemployment

5    Insurance Code, and all wage orders"). Plaintiff would thus be deemed an "employee" under the

6    relevant statutes unless Defendants could carry their burden of showing that all three prongs of the

7    ABC test have not been satisfied. *See Veasman v. Nuance Commc'ns, Inc.*, 2022 WL 2964411, at *5

8    (C.D. Cal. June 29, 2022) (burden of proof is on the employer).

9         Needless to say, Defendants have not satisfied the required showing under the demanding

10   ABC test—which they do not even reference—because the existence of a written contract or

11   definitive promise is not an element. Although Defendants may contest whether the ABC test applies,

12   they have not identified any other relevant test for analyzing the existence of an employer-employee

13   relationship,[9] and, in any event, whether Plaintiff was performing services such that the ABC test

14   applies would itself create a disputed issue of fact. It is difficult to see how Defendants could even

15   advance an argument that Plaintiff was not doing substantial work for their benefit.

16

17

18   ——————————————

19

20        (a) that the worker is free from the control and direction of the hirer in connection
          with the performance of the work, both under the contract for the performance of

21        the work and in fact; *and* (b) that the worker performs work that is outside the usual
          course of the hiring entity's business; *and* (c) that the worker is customarily engaged

22        in an independently established trade, occupation, or business of the same nature as
          that        involved        in        the        work        performed.

23   *Dynamex Operations W. v. Superior Ct.*, 416 P.3d 1, 34 (2018).

24

25   [9] Puzzlingly, Defendants reference a definition of "employer" from a California statutory order that
     relates to employee welfare, Cal. Code Regs. tit. 8, §11040(2)(H), and causes of action not brought

26   here. Even if this definition were somehow applicable, it is not an alternative test.

27

     - 20 -

28   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
     AND PARTIAL SUMMARY JUDGEMENT
     Case Number: 3:22-cv-02010-AMO (DMR)

1    *Second*, Defendants' arguments with respect to California Business and Professions Code §

2    17200, *et seq.* ("Unfair Competition Law" or "UCL") fail because their conduct was unlawful, as

3    demonstrated above, and included violations of the Labor Code.

4    *Third*, Defendants' challenge to the availability of attorneys' fees under the UCL is not ripe

5    for decision because attorneys' fees are only granted *upon motion, to the successful party*. Cal. Code

6    Civ. Proc., § 1021.5. Prior to a determination of liability, the Court cannot find that Plaintiff will

7    recover damages, much less decide the availability of attorneys' fees.

8    Moreover, Plaintiff meets all of the § 1021.5 criteria: her action protects critical employee

9    rights to be paid for work rendered and reimbursed for expenses incurred by an employer. "Courts

10   have broadly interpreted the important right concept and 'frequently reject attempts to characterize

11   rights in their most narrow or personal light.'" *Myasnyankin v. Nationwide Mutual Ins. Co.*, 317 Cal.

12   Rptr. 3d 744, 752 (Cal. Ct. App. 2024), *reh'g denied* (Feb. 23, 2024), *review denied* (Apr. 24, 2024)

13   (quoting S*weetwater Union High School Dist. v. Julian Union Elementary School Dist.*, 249 Cal. Rptr.

14   3d 309, 326 (Cal. Ct. App. 2019)).[10] Plaintiff's litigation also confers a benefit on the class of

15   employees working for entities prior to their legal creation, which is not uncommon in the startup

16   space. Ex. C (Chandra Tr.104:03 to 106:04). "As with the important right factor, courts have broadly

17   construed the significant benefit factor." *Myansyankin*, 317 Cal. Rptr. 3d at 752 (the benefit can be

18   conceptual rather than concrete, and its extent, the size and population of the class need not be exactly

19   defined) (internal citations omitted).

20   *Fourth*, with respect to Plaintiff's claim for statutory penalties pursuant to Cal. Labor Code

21   § 203, Defendants assert that they are not subject to waiting time penalties because they have raised

22   the legal defense that Plaintiff was not an employee. However, merely raising a defense is

23

24   ───────────────

[10] Defendants' reliance on *Luck v. S. Pac. Transportation Co.*, 218 Cal. App. 3d 1, 30, (Ct. App.

25   1990), *reh'g denied and opinion modified* (Mar. 23, 1990), is misplaced because that decision has

     been criticized as erroneously considering only the financial incentives to the plaintiff, not also the

26   burden on the plaintiff. *Conservatorship of Whitley*, 50 Cal. 4th 1206, 1217, 241 P.3d 840, 848 (2010).

     The years of litigation and financial hardship that this case has entailed for Plaintiff firmly supports

27   an award of fees, which she will fully document at the appropriate time.

28   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
     AND PARTIAL SUMMARY JUDGEMENT
     Case Number: 3:22-cv-02010-AMO (DMR)

1  insufficient for good faith, "[o]therwise, the vast majority of defendants would escape liability for

2  waiting time penalties, simply by disputing the facts." *Cuc Dang v. Sutt's Place, Inc.*, 2012 WL

3  2977223, at *7 (N.D. Cal. July 19, 2012). The December 16 Email demonstrates that Cashman

4  understood that Defendants were obligated to honor their commitment to Plaintiff, which they did

5  not do. That creates an issue of fact as to good faith that cannot be defeated by post hoc legal

6  defenses. *See, e.g.*, *Bain v. Tax Reducers, Inc.*, 161 Cal. Rptr. 3d 535, 562 (Cal. Ct. App. 2013)

7  (denying summary judgment despite legal defense); *Danko v. O'Reilly*, 2012 WL 3279431 (Cal.

8  Super. Ct. Apr. 12, 2012) (denying summary judgment given evidence defendant "acknowledged"

9  plaintiff was entitled to wages).

10       *Fifth*, Plaintiff is of the class of employees protected by California Labor Code Section 210.

11  That provision provides for penalties for violations of certain Labor Code provisions, including

12  Section 204. MSJ at 21. In turn, Labor Code Section 204(a) applies to the salaries of executives of

13  employers, like Defendants, covered by the Fair Labor Standards Act, which must be paid monthly.

14  *Id.*; *see also On-Line Power, Inc. v. Mazur*, 149 Cal. App. 4th 1079, 1086, 57 Cal. Rptr. 3d 698, 702

15  (2007) ("section 204 . . . permits payment of wages on a monthly basis to executive, administrative,

16  and professional employees"). While Plaintiff's salary was supposed to be retroactive to December

17  1, Exs. FF, WW, it was never paid, which qualifies as a violation of Section 204(a).

18       Although Defendants also claim that there is no private right of action under these Labor Code

19  provisions, they overlook the fact that Plaintiff has properly asserted a Private Attorneys General Act

20  claim, which allows Plaintiff to recover penalties for Defendants' Labor Code violations. *See Nguyen*

21  *v. Wells Fargo Bank*, 2016 WL 5390245, at *10 (N.D. Cal. Sept. 26, 2016) ("a violation of section

22  204 can form the basis for a claim under the UCL or for PAGA penalties"); *Amaral v. Cintas Corp.*

23  *No. 2*, 163 Cal. App. 4th 1157, 1195 (Cal. Ct. App. 2008) (PAGA allows private recovery of penalties

24  previously unavailable under Section 210).

25       *Sixth*, Defendants contend that Plaintiff had to be induced to permanently change her residence

26  to warrant protection under California Labor Code § 970. Although certain cases have found such a

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGEMENT
Case Number: 3:22-cv-02010-AMO (DMR)

1    requirement to exist, others have found that temporary relocation can support a Section 970 claim.[11]

2    Plaintiff submits that the broader interpretation better comports with the statutory language, which is

3    expansively written to cover conduct beyond a permanent change in residence. Cal. Lab. Code, § 970

4    (applying to misconduct that causes a worker "to change from one place to another in this State or

5    from any place outside to any place within the State, or from any place within the State to any place

6    outside").

7        Here, Defendants induced Plaintiff to temporarily change her location by traveling from San

8    Francisco to other places in California, Boston, and New York on behalf of Arrowside. MSJ at 8, 15.

9    That Plaintiff combined certain trips for Arrowside with personal meetings does not negate the fact

10   that Defendants induced her to travel. For example, when Defendants informed Plaintiff of her ouster,

11   Plaintiff was in New York to meet with potential LP investors on behalf of Arrowside, a trip Copeman

12   approved and encouraged. Ex. VV.

13       For these reasons, Defendants arguments for summary judgment as to Plaintiff's statutory

14   claims should be denied.

15   ### IV.    Defendants' Unjust Enrichment Arguments Fail

16       As Defendants note, a claim for unjust enrichment has only two elements: (1) receipt of a

17   benefit, and (2) unjust retention of that benefit at the expense of another. MSJ at 16. Although they

18   claim that neither element has been satisfied, their-half-hearted factual assertions are easily

19   dispatched.

20       Defendants contend that Plaintiff's efforts on behalf of Arrowside were for "naught" because

21   the Ventures was never officially formed and the investments she helped make have not yet generated

22   significant returns. *Id.* However, the reality is that Defendants received the benefits of her labor and

23   ideas (as well as the unpaid expenses she advanced), and yet they have paid her nothing. That is an

24

25

[11] *Compare Miller v. Unified Sci., LLC*, 2020 WL 6161634, at *5 (S.D. Cal. Oct. 20, 2020) (temporary
26   relocation could form basis for § 970 claim) with *Asnaashari v. PNY Techs., Inc.*, 2013 WL 2403605,
     at *2 (N.D. Cal. May 31, 2013) (relied upon by Defendants).

27

- 23 -

28

1    unjust benefit for which she is due compensation. *See First Nationwide Savings v. Perry*, 11

2    Cal.App.4th 1657, 1662 (Cal. Ct. App. 1992) ("Benefit means any type of advantage."). Moreover, it

3    is a heavily disputed issue as to whether the Arrowside investment vehicles Plaintiff was working on

4    were later formed and continues to exist albeit using different monikers. Summary judgment is plainly

5    inappropriate given those factual disputes. *See, e.g.*, *Cai v. CMB Exp. LLC*, 2024 WL 2334509, at *7

6    (C.D. Cal. Apr. 4, 2024) (denying summary judgment where there was a dispute as to whether the

7    defendant received a benefit).

8        Defendants' contention that Cashman "offered Plaintiff compensation for her time and carry

9    on the deals she was involved with," (MSJ at 17), is simply incorrect. Defendant Cashman suggested

10   he might compensate Plaintiff, he failed to commit to a compensation package despite Plaintiff's

11   repeated attempts to get him to formalize his offer. Defendants' one-sided view of the discussions

12   between Cashman and Plaintiff does not make the matter ripe for decision on summary judgment.

13       **V.    Plaintiff's Damages Are Significant**

14       Not only are Defendants' arguments on this point contradicted by their contention that

15   Plaintiff cannot recover legal fees under the UCL because of her significant damages (MSJ at 19),

16   but they border on the frivolous. Plaintiff's damages are set forth in the expert report of P. Garth

17   Gartrell, an esteemed compensation expert with 25 years of experience, and include millions in

18   damages alone that Plaintiff incurred from Founders Fund income. Ex. HHH. While Plaintiff did not

19   intend to remain her entire career at Founders Fund, she was highly regarded and would not have

20   departed without first finding a position at another VC fund Ex. F (Gross Tr. 24:15 to 25:10); Ex T.

21   However, Defendants' misconduct arrested Plaintiff's once promising career trajectory and stained

22   her reputation, and she has not been able to find full-time employment in the VC industry since forced

23   her out of Arrowside. Chang Decl. ¶ 13.

24

25

26

27

- 24 -

28   **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
     AND PARTIAL SUMMARY JUDGEMENT
     Case Number: 3:22-cv-02010-AMO (DMR)**

1

**CONCLUSION**

2       For the reasons stated above, Plaintiff respectfully requests the Court DENY Defendants'

3   Motion for Summary Judgment or Partial Motion for Summary Judgment in its entirety as there

4   exist genuine issues of material fact as to all of Plaintiff's claims.

5

6   DATED: September 7, 2024

7                                   Respectfully submitted,

8                                   By:_____*s/ L. Reid Skibell*_____

9                                       L. Reid Skibell (admitted *pro hac vice*)
                                        Ashley Zitrin (Cal. Bar No. 262238)
                                        Lyn R. Agre (Cal. Bar No. 178218)

10                                      Edward E. Shapiro (Cal. Bar No. 326182)
                                        Glenn Agre Bergman & Fuentes LLP

11                                      580 California Street, Suite 1420
                                        San Francisco, CA 94104

12                                      Telephone: (415) 599-0880

13                                      rskibell@glennagre.com
                                        azitrin@glennagre.com

14                                      lagre@glennagre.com
                                        eshapiro@glennagre.com

15

16                                  *Attorneys for Plaintiff Stacy Chang*

17

18

19

20

21

22

23

24

25

26

27
                                         - 25 -
28   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
                  AND PARTIAL SUMMARY JUDGEMENT
              Case Number: 3:22-cv-02010-AMO (DMR)